[Nos. 83-41017, 85-41339, 84-41044-2.    Division Two.    June 26, 1970.]

THE STATE OF WASHINGTON, *Respondent*, V. CLARENCE DWAYNE MITCHELL, *Appellant*.

THE STATE OF WASHINGTON, *Respondent*, V. CLARENCE DWAYNE MITCHELL, *Appellant*.

*In the Matter of the Application for a Writ of Habeas Corpus of* CLARENCE D. MITCHELL, *Petitioner*, V. WILLIAM R. CONTE, *Respondent*.

944

*Oberquell & Ahlf* and *Kenneth R. Ahlf,* for appellant (appointed counsel for appeal).

*Jerome Buzzard, Prosecuting Attorney,* and *Ward J. Rathbone, Deputy,* for respondent.

ARMSTRONG, C. J.—Defendant presents consolidated appeals from a judgment and sentence on a plea of guilty to forgery in the first degree, and from a revocation of probation and sentence for arson in the second degree. Also consolidated with these appeals is defendant's petition for a writ of habeas corpus. His counsel on appeal did not represent him in the trial court proceedings.

On May 29, 1968, defendant entered a plea of guilty to arson in the second degree, which was based upon a charge of burning an automobile on May 6, 1968. Prior to accepting his guilty plea, the trial court advised defendant of his constitutional rights and inquired as to his understanding and the voluntariness of his plea. The court then adjudged defendant to be guilty as charged, deferred sentence for 2 years and placed defendant on probation.

On July 31, 1968, defendant was charged with the crime of forgery in the first degree in two counts—issuance of a $28 check on July 14, 1968 and a $25 check on July 15, 1968. He was arrested on December 17, 1968. He was arraigned on January 13, 1969, and was again advised of his constitutional rights prior to the entry of his plea. The court also inquired of him and of his counsel as to defendant's understanding and the voluntariness of the plea to be entered. Defendant entered pleas of not guilty to both counts. His counsel informed the court that there would be an additional plea of not guilty by reason of mental irresponsibility as to both counts. Subsequent to the January 13, 1969 arraignment, defendant was examined and evaluated by a psychiatrist in relation to the mental irresponsibility plea; a report was submitted to the trial court.

Defendant was detained in the Thurston County jail until March 13, 1969, when he was again arraigned. The psychiatric report was discussed and it was determined by the court, with the agreement of defendant's counsel and the prosecution, that there was not sufficient basis for the plea of not guilty by reason of mental irresponsibility. Defendant then changed his plea to guilty to one count of the forgery charge. The second count was dismissed. The plea of guilty was accepted after the following exchange:

THE COURT: You are ready to change your plea at this time? THE DEFENDANT: Yes. THE COURT: You have fully discussed the implications of your change of plea with your counsel in this matter, Mr. Alexander? THE DEFENDANT: Yes. THE COURT: You have thoroughly advised him Mr. Alexander? MR. ALEXANDER: Yes, I have, Your Honor. THE COURT: Very well.

There was no further inquiry as to whether the guilty plea was voluntarily and understandingly given. The plea of guilty was accepted and defendant was sentenced by the court to a maximum term of 20 years for forgery in the first degree. On the basis of the plea of guilty to one count of forgery, the court set aside the prior deferral of sentence

and imposed a maximum of 10 years for the second-degree arson charge.

Defendant's consolidated appeals and petition for writ of habeas corpus are directed to the single issue of whether the plea of guilty to the forgery count at the March 13, 1969 proceedings was voluntarily and understandingly given. Defendant first contends that his change of plea to guilty was not voluntary and that it was error for the trial court to accept defendant's guilty plea without an affirmative showing that the plea was intelligently and voluntarily given.

Defendant's second contention is founded upon the first. The contention is that since the deferral of sentence on the arson conviction was revoked solely on the basis of the guilty plea on the forgery charge and that since the plea was not voluntarily and intelligently given, there remains no factual basis for revocation of the probation and imposition of sentence. Following this logic the sentence for arson in the second degree would stand or fall with the conviction, judgment and sentence for first-degree forgery which, in turn, depends on the validity of the plea of guilty and its acceptance by the trial court.

■ Defendant's first contention is that the extent of the trial court's advice to defendant of his constitutional rights and its inquiry into defendant's understanding thereof and into the voluntariness of his guilty plea were inadequate under the terms of *Woods v. Rhay*, 68 Wn.2d 601, 414 P.2d 601 (1966). Defendant relies on the definition of a voluntary guilty plea stated at page 605 of the *Woods* opinion:

> To be voluntary, a plea of guilty must be freely, unequivocally, intelligently and understandingly made in open court by the accused person with full knowledge of his legal and constitutional rights and of the consequences of his act. It cannot be the product of or induced by coercive threat, fear, persuasion, promise, or deception. *State v. Taft*, 49 Wn.2d 98, 297 P.2d 1116 (1956); *In re Palmer v. Cranor*, 45 Wn.2d 278, 273 P.2d 985 (1954); *State v. Stacy*, 43 Wn.2d 358, 261 P.2d 400 (1953); *In re Burgess v. Cranor*, 39 Wn.2d 428, 235 P.2d 830 (1951); *In*

re *Pennington v. Smith,* 35 Wn.2d 267, 212 P.2d 811 (1949); *State v. Cimini,* 53 Wash. 268, 101 Pac. 891 (1909).

We agree with this definition.

■ Although *Woods v. Rhay* does not set forth specific standards for determining voluntariness, it does set forth general guidelines for making this determination at page 605:

> Before accepting a plea of guilty from an accused person, it is the duty and responsibility of the trial judge to satisfy himself that the plea is in fact voluntary, and to ascertain that the accused person fully appreciates and understands the consequences of his plea. This should be done whether the accused is represented by counsel or not, and the trial judge's inquiries together with the accused person's responses should be made a matter of record so that doubt may not later be cast upon the propriety of the proceedings.

In considering all of the proceedings in this case and measuring them against the guidelines of *Woods,* we think that defendant's change of plea from not guilty to guilty on March 13, 1969 was voluntarily and knowledgeably made.

Defendant was familiar with courtroom procedure in that on May 29, 1968, before he entered a guilty plea to arson in the second degree, he was advised of his constitutional rights and the consequences of his plea in the presence of counsel. He acknowledged that his counsel had advised him of his legal rights. The procedure was much the same at his January 13, 1969 arraignment on the charge of forgery where again he was represented by counsel. It was against this background that he changed his plea to guilty, which plea was accepted by the trial court after the very brief exchange with him and his counsel as to his understanding of the effect of his change of plea. His counsel stated that there was no allegation that defendant was insane or mentally irresponsible.

While we might agree that the March 13, 1969 arraignment, where defendant changed his plea, was the more critical time for a completely comprehensive determination

of its voluntariness, we cannot find reversible error on the basis of the applicable law of *Woods v. Rhay, supra,* wherein the court stated at page 605:

Though a failure on the part of the trial judge to fully determine the voluntariness of a plea does not necessarily constitute a deprivation of due process of law, such a failure readily lends itself to such a claim.

We find in looking to the record of all the proceedings involved in the consolidated cases that the general guidelines of *Woods* were substantially followed.

■ Defendant's next argument is that *Boykin v. Alabama,* 395 U.S. 238, 23 L. Ed. 2d 274, 89 S. Ct. 1709 (1969), dictates a reversal under the circumstances of this case. *Boykin* ruled that a silent record on the issue of whether defendant voluntarily and understandingly entered a plea of guilty constitutes reversible error under the due process clause of the fourteenth amendment to the United States Constitution. In *Miller v. Rhay,* 1 Wn. App. 1010, 466 P.2d 179 (1970), we determined that the rule of *Boykin* was intended to be of prospective application only. The rule is not to be applied to guilty pleas accepted prior to June 2, 1969, the date of the *Boykin* decision. In any event, the application of the Boykin rule would not necessarily require a reversal since it would have to be determined whether to look only to the record of the March 13, 1969 proceeding or whether to analyze compliance in terms of all the proceedings.

On the basis of the foregoing discussion, we are of the opinion that the contentions presented in defendant's consolidated appeals are insufficient to find reversible error. On this basis the conviction, judgment and sentence for forgery in the first degree and the revocation of probation and sentence for arson in the second degree must be affirmed.

There are, however, additional problems presented in the petition for writ of habeas corpus. Defendant makes allegations in his petition relative to events occurring prior to, during and after the trial court proceedings which are not

reflected in the record. While some of these allegations appear to be without merit, others appear to be real and deserving of consideration in relation to the question of the voluntariness of defendant's March 13, 1969 change of plea to guilty and his understanding of its effect. In particular, defendant alleges that he was threatened by the prosecuting attorney with a prosecution under the habitual criminal act, which was explained to him to mean a life sentence, if he insisted on a jury trial and refused to plead guilty. He also alleges that his counsel in the forgery proceeding threatened to desert him if he did not change his plea to guilty and throw himself on the mercy of the court.

The threat of the habitual criminal prosecution is the more serious allegation. By affidavit of the former prosecuting attorney, the state admits that he advised defendant's attorney that if defendant was convicted on both counts of forgery it would be his intention to file a charge alleging defendant to be an habitual criminal. The state contends that this was not a threat, but merely an expression of intention. Even if we were to accept this as a correct statement of the law, we could not find that defendant had satisfied either the first or second sections of RCW 9.92.090.[1]

---

[1]RCW 9.92.090 provides: "Every person convicted in this state of any crime of which fraud or intent to defraud is an element, or of petit larceny, or of any felony, who shall previously have been convicted, whether in this state or elsewhere, of any crime which under the laws of this state would amount to a felony, or who shall previously have been twice convicted, whether in this state or elsewhere, of petit larceny, or of any misdemeanor or gross misdemeanor of which fraud or intent to defraud is an an element, shall be adjudged to be an habitual criminal and shall be punished by imprisonment in the state penitentiary for not less than ten years.

"Every person convicted in this state of any crime of which fraud or intent to defraud is an element, or of petit larceny, or of any felony, who shall previously have been twice convicted, whether in this state or elsewhere, of any crime which under the laws of this state would amount to a felony, or who shall previously have been four times convicted, whether in this state or elsewhere, of petit larceny, or of any misdemeanor or gross misdemeanor of which fraud or intent to defraud is an element, shall be punished by imprisonment in the state penitentiary for life."

There are two reasons why defendant could not be found to be an habitual criminal: (1) one cannot be adjudged to be an habitual criminal on the basis of two or three felony convictions on the same day, and (2) defendant had not been "convicted" of a prior felony as the term "conviction" is used in the habitual criminal statute.

■ In *State v. Jones,* 138 Wash. 110, 111, 244 P. 395 (1926), the court held that one could not be adjudged an habitual criminal within the terms of the second section of the act, which requires two prior felony convictions, on the basis of three separate felony convictions on the same day. The court pointed out that the habitual criminal statute was passed "in the hope of working a reformation of criminals, and, when that hope of reformation had passed, the increased punishment should be meted out, but only then."

An analogous statement of the rationale of *State v. Jones* is contained in an annotation in 24 A.L.R.2d 1247 (1952), wherein the principle underlying the enactment of habitual criminal statutes and the resulting considerations relating to sequence of convictions are discussed at page 1248:

> In this connection, it has been brought out in numerous cases that, although differing somewhat in language, the same principle is inherent in a habitual criminal statute, namely, that the legislature in enacting such a statute intended it to serve as a warning to first offenders and to afford them an opportunity to reform, and that the reason for the infliction of severer punishment for a repetition of offenses is not so much that defendant has sinned more than once as that he is deemed incorrigible when he persists in violations of the law after conviction of previous infractions.

> Consonant with this theory as to the purpose of the law, and as a natural corollary of the view previously stated, it has been held in the great majority of cases that two or more convictions on the same day, or on different counts under the same indictment, or convictions at the same term of court cannot be cumulated so as to count as two or more previous convictions within the meaning of habitual criminal statutes, although, as specifically held in some cases, one of such convictions may be counted as a prior conviction within the meaning of the statute.

Obviously defendant could not have been adjudged to have attained habitual criminal status by conviction of two counts of forgery, which crimes occurred on successive days and were charged in the same information. Nor could the revocation of probation and sentence on the first charge add up to habitual criminal status if we consider the conviction on the first charge to have occurred the day of the sentencing.

We shall next determine whether the original deferred sentence and probation, less than 2 months before the forgery incidents, could constitute a prior conviction. At the outset we point out that the word "conviction" has more than one meaning. *See Woods v. Rhay, supra; Tembruell v. Seattle,* 64 Wn.2d 503, 392 P.2d 453 (1964); *State v. Zounick,* 133 Wash. 638, 234 P. 659 (1925); *State v. Tate,* 2 Wn. App. 241, 469 P.2d 999 (1970).

We have no cases directly in point in this jurisdiction, but there is a comprehensive discussion of what constitutes a former "conviction" in relation to habitual criminal statutes in 5 A.L.R.2d 1080 (1949). The general rule is that a prior deferred or suspended sentence cannot be utilized as a "conviction" within the meaning of a statute enhancing the penalty for a second or subsequent conviction. We agree with this rule.

This is consistent with the philosophy expressed in *State v. Jones, supra,* although that case dealt specifically with the question of the required sequence in time of convictions in order to constitute the status of an habitual criminal. At page 112 the court quoted with approval from H. Underhill, Criminal Evidence § 772 (3d ed. 1923):

Many of the statutes regulating the punishment of habitual criminals expressly declare that it must appear in evidence that the subsequent crime was committed after the date of the prior conviction of the accused. This rule requiring it to be proved that the conviction of the earlier crime antedates the commission of the latter offense for which the accused is now on trial would doubtless apply even where the statute is silent on this point, as *otherwise the offender would have had no opportunity to*

*reform because of the salutary discipline of the punishment which he has received as a consequence of the first conviction.* The infliction of the increased punishment is a consequence of the failure to reform on the part of the accused *after his earlier punishment.* Hence, if the latter crime has been committed prior to the conviction, it is no proof whatever that the *sentence and punishment* under such conviction had failed in their reformatory effect upon the accused.

(Italics ours. Footnote omitted.) *See also State v. Zounick, supra.*

■ We conclude that this 21-year-old defendant, whose first felony was committed approximately 2 months before he violated probation because he is alleged to have forged two checks, could not have been determined to be an habitual criminal for two reasons: (1) it is reversible error to adjudge one an habitual criminal for more than one conviction occurring on the same day, and (2) a "conviction" within the meaning of the habitual criminal statute imports the element of finality to the prior judgment and sentence—it cannot be based upon a suspended or deferred sentence. If the "statement of intention" of the prosecuting attorney to file habitual criminal charges if defendant was convicted of both counts of forgery was communicated to the defendant, and if it detracted from his voluntary and understanding plea of guilty, the statement would constitute reversible error.

We do not find it necessary to decide whether a prosecuting attorney's statement of intention to file habitual criminal charges if a defendant is convicted by a jury, would constitute reversible error if the defendant was in fact properly subject to such charges. We note, however, that this was *one* of the factors which induced the court to set aside a conviction and sentence on a plea of guilty in *Morgan v. Rhay,* 78 W.D.2d 106, 470 P.2d 180 (1970). We do decide that if there is no basis for such an "expression of intention", it has the effect of deception which could interfere with the voluntary and understanding entry of a plea of guilty.

Defendant's allegation that his counsel threatened to withdraw if he insisted on a jury trial and refused to plead guilty is also a serious question. We think, however, that this is a problem likely resulting from a misunderstanding and a matter limited to a purely factual determination.

In the light of the limited record at the time of acceptance of the plea of guilty to one count of forgery in the first degree and the serious allegations of defendant, we find that the administration of justice would be best served by an evidentiary hearing on the question of the voluntariness of defendant's change of plea with special emphasis placed on the allegation of the state's statement of intention to prosecute defendant as an habitual criminal and a determination of whether that statement influenced his plea of guilty, and the allegation that his attorney threatened to withdraw if he did not plead guilty.

The defendant, Clarence Dwayne Mitchell, is remanded to the custody of the sheriff of Thurston County to be held for appropriate proceedings and the taking of testimony in order to determine whether he voluntarily and understandingly entered his guilty plea. These proceedings shall be conducted in accordance with the provisions of CAROA 56 (k) (1) and (2).

If it is determined that defendant's plea was voluntarily and understandingly given, the convictions and sentences will stand and defendant will be returned to confinement under the terms of his sentence. If it is determined that the plea of guilty was not voluntarily and understandingly given, the trial court is then directed to vacate the judgment and sentence on the charge of forgery in the first degree and the revocation of probation and sentence for his conviction of arson in the second degree and to grant defendant a new trial.

It is so ordered.

PEARSON and PETRIE, JJ., concur.