THE STATE OF WASHINGTON, *Respondent*, v. DOUGLAS
LYNN HADSELL, *Appellant*.
*In the Matter of the Application for a Writ of Habeas Corpus
of* DOUGLAS L. HADSELL, *Appellant*, v. THOMAS G. PINNOCK,
*Respondent.*

*Kenneth Kanev* and *Thomas J. Chambers,* for appellant
(appointed counsel for appeal).

*Slade Gorton, Attorney General, Lee D. Rickabaugh, As-*

*sistant, Christopher T. Bayley, Prosecuting Attorney,* and *Gerald M. Lorentson, Deputy,* for respondent.

SWANSON, J.—Douglas Lynn Hadsell, a/k/a Harvey W. Prescott, pleaded guilty to second-degree burglary in King County Superior Court and received a 3-year deferred sentence. At a subsequent hearing the deferred sentence was revoked, and Hadsell was given the maximum sentence of 15 years' imprisonment. Defendant Hadsell then sought his release by petitioning for a writ of habeas corpus,[1] contending that his plea was not voluntarily and intelligently entered and that the sentencing judge committed error in refusing to permit him to withdraw his guilty plea.

A full evidentiary hearing on his application for a writ of habeas corpus was ordered. At the end of the 2-day fact finding hearing Hadsell's application was denied, but the court ordered another revocation hearing[2] which was held January 15, 1971, with the same result as the first. Hadsell appeals from the denial of his application for writ of habeas corpus and from the judgment and sentence entered January 15, 1971, after the second revocation hearing. The two appeals have been consolidated for presentation to this court.

We direct our attention first to the habeas corpus proceeding and Hadsell's assignment of error to the court's conclusion that (a) his plea of guilty was "freely, voluntarily, knowingly and intelligently made,"[3] and (b) his re-

[1]Defendant Hadsell filed petitions for a writ of habeas corpus in both Mason and Snohomish counties which were transferred to King County.

[2]Judge Smith concluded "that it does not appear that petitioner received the fullest benefits of fundamental fairness and due process at the time of the Probation Revocation hearing before the King County Superior Court on November 18, 1969," and therefore ordered a new hearing. Conclusion 6.

[3]The trial court's conclusion 2 states: "That petitioner was accorded adequate due process of law during all stages of the proceedings on October 17, 1969 before the King County Superior Court, Cause No. 51732, at which time petitioner made and entered his plea of Guilty.

quest to withdraw his plea of guilty was properly denied.[4]

Hadsell argues that he mistakenly believed that his plea of guilty to second-degree burglary carried only a 5-year maximum sentence to prison instead of the 15-year maximum sentence he actually received. He points to the trial court's findings of fact to prove the absence of any evidence that anyone advised him of the maximum penalty. From this he argues that he did not know the consequences of his plea, which compels a conclusion that it was not freely and voluntarily given. Finding 6 recites:

> The petitioner denies that he received advice concerning maximum penalty for Second Degree Burglary. Jeffrey Steinborn, attorney appointed by the court to assist the petitioner at the prior hearings, testified in his habeas corpus proceeding that "It is my recollection that I did not advise you [Petitioner] of the maximum penalty for Second Degree Burglary." There is no evidence that the court [the Honorable Story Birdseye] advised ·the petitioner of the maximum penalty for Second Degree Burglary.
>
> Further, there is no evidence before the court that any other person advised the petitioner of the maximum penalty for Second Degree Burglary.

And finding 7 states:

> The court is not satisfied under the evidence in this case that the petitioner in fact knew whether the penalty for second degree burglary was five years or fifteen years at the time he entered his plea of guilty.

■ While the trial judge does not have an affirmative duty to advise the defendant of a maximum possible sentence, a guilty plea must be made voluntarily and with knowledge of its consequences.[5] *Miesbauer v. Rhay,* 79

---

This court concludes that the plea of Guilty was freely, voluntarily, knowingly and intelligently made by the petitioner with knowledge of his legal and constitutional rights."

[4]The trial court's conclusion 3 states: "This court further concludes that at the time of the revocation hearing before the Honorable Story Birdseye on November 18, 1969, in King County Cause No. 51732, the court properly denied petitioner's request to withdraw his plea of Guilty, and there was no abuse of discretion by the court."

[5]We wish to emphasize again the admonitions so carefully enunciated in *Woods v. Rhay,* 68 Wn.2d 601, 414 P.2d 601 (1966), to the

Wn.2d 505, 487 P.2d 1046 (1971). As stated in *Miesbauer* at 507:

> Rather, we have followed the general rule that whether the defendant knew the consequences of his plea is a *fact* to be determined from all the circumstances.

(Italics ours.) And as we made clear in *State v. White*, 5 Wn. App. 615, 616, 489 P.2d 934 (1971):

> The determination of whether defendant had the required knowledge is made on the totality of the circumstances as revealed by the record.

We therefore review the pertinent facts which indicate the totality of circumstances in this case.

When defendant Hadsell appeared in King County Superior Court on October 17, 1969, and petitioned for authority to withdraw his plea of not guilty and to enter a plea of guilty, he was known as Harvey W. Prescott. He acted as his own attorney with, however, the assistance of his court appointed legal advisor.[6] Defendant Hadsell stated to the court:

> I am changing my plea to guilty Your Honor. I have been fully advised by Mr. Steinborn as to all my rights. He himself and his partner, Mr. Nolan, have been of great help to me but I am guilty of the charges and it would be unfair to the taxpayers to go to trial and unfair to myself. I am guilty, Your Honor.

The court then inquired as to the knowledge gained from discussions with his legal advisor.

> THE COURT: Have you discussed the matter at some length with Mr. Steinborn and his partner? THE DEFENDANT: Yes. THE COURT: Do you feel satisfied now, Mr. Prescott [Hadsell], with the quality of legal services the

effect that trial judges should, in taking a plea, state to the defendant on the record the maximum sentence for the crime charged and thereby settle any future question as to the defendant's knowledge of the consequences of his plea. *See also* ABA Project on Minimum Standards for Criminal Justice, *Standards Relating to Pleas of Guilty* § 1.4 (Approved Draft 1968).

[6] Defendant Hadsell refused to accept court appointed legal representation when arraigned, insisting on his right to represent himself. Nevertheless, a lawyer was appointed to assist him and to act in the capacity of a legal advisor.

court has made available to you? THE DEFENDANT: Yes, I do. Mr. Steinborn as legal advisor is three times better than the two attorneys I had prior to him and they were working in full capacity. I am quite satisfied with his representation, yes. THE COURT: You know the reason I ask is that you were a little reluctant to accept legal help originally.

The court proceeded to determine Hadsell's understanding of his constitutional rights.

THE COURT: All right now, you do think you understand all of your constitutional rights, that is if you wanted to go to trial you could; you would be entitled to a trial by jury; you would be entitled to a lawyer; you would be entitled to call witnesses in your own behalf; you would be entitled to be confronted by witnesses against you. I want to be sure you understand all of that. THE DEFENDANT: Yes, I do. The prosecutor, I believe, is going to recommend three years deferred on the condition I go back to Canada and today I was before the deportation committee that has deported me on the condition that these charges be disposed of.

The defendant then assured the court that no promises had been made to him but that he expected the prosecutor to recommend a 3-year deferred sentence on condition of deportation to Canada. The prosecutor made the anticipated recommendation and the court entered an order deferring sentence for 3 years conditioned on Hadsell's deportation.

While awaiting entry of the deportation order, the immigration authorities learned that the defendant was masquerading as Harvey W. Prescott, a citizen of Canada, when, in fact, he was Douglas Lynn Hadsell, a United States citizen and a fugitive from justice.[7] When the prosecutor received this information, the defendant was returned on November 18, 1969, to the sentencing judge for a revocation hearing. At that time, Hadsell admitted the deception but promptly countered by moving for leave to change his plea to not guilty. The trial judge denied this request, and at the conclusion of the hearing revoked the

[7]Hadsell acknowledged that he was wanted in California on a criminal charge.

order deferring sentence, and sentenced him to the maximum term.

■ We are thus presented with a record devoid of any affirmative findings that the defendant either knew or was advised of the maximum penalty for second-degree burglary. The trial court in the habeas corpus evidentiary hearing accepted as a fact this statement by Hadsell's legal advisor Jeffrey Steinborn:

> It is my recollection that I did not advise you [Petitioner] of the maximum penalty for Second Degree Burglary.

We are therefore prevented from indulging in a presumption that his attorney advised him of the maximum penalty, as in *White,* when we said, 5 Wn. App. at 617:

> it did affirmatively appear that his counsel had discussed the case with White at length and that he had been advised of his constitutional rights. In this context we must infer White's counsel performed his fundamental and elementary duty of advising him of the maximum penalty which lawfully could be imposed.

There is, however, a significant distinction between the case at bar and the cases relied upon by defendant Hadsell.[8] In those cases the defendant was represented by counsel and relied upon his counsel's representation and advice. That is not the situation here. It is apparent from the record that, initially, Hadsell did not want legal counsel and only reluctantly accepted counsel in an advisory capacity. Hadsell's appointed legal advisor, attorney Steinborn, when asked about the circumstances of his appointment by Hadsell, during the fact finding hearing testified:

> It is my recollection that Judge Birdseye requested that I assist you in preparation of your case. Judge Birdseye indicated that you had two or three other Counsel with who [*sic*] you were not getting along and he requested that I—although you wish to represent yourself—that I sort of shepherd along the proceedings and advise you as

---

[8]*State v. Mitchell,* 2 Wn. App. 943, 472 P.2d 629 (1970); *McBain v. Maxwell,* 2 Wn. App. 27, 466 P.2d 177 (1970); *Miller v. Rhay,* 1 Wn. App. 1010, 466 P.2d 179 (1970).

you felt it necessary. Q What was our relationship? A I suspect that you've never really trusted me and *didn't ask me to volunteer advise* [*sic*], although you did ask me a number of specific legal questions and listened to my responses. It was my consensus, for the most part, you wished to represent yourself but you wished me to do those things for you which you could not do yourself.

(Italics ours.)

The trial court provided defendant, through the appointment of a legal advisor, the means by which he could obtain any relevant information, *i.e.*, the maximum penalty for second-degree burglary. He had only to ask attorney Steinborn. The context within which Hadsell permitted attorney Steinborn to serve did not place upon him an obligation to do more than serve in the role to which he was appointed and permitted to fill—that of an advisor only. The defendant understood this, and this relationship was the result of the defendant's own insistence. He cannot now be heard to complain when he neglected to utilize the assistance provided.

■ In addition, we are convinced that defendant's ignorance of the maximum penalty did not affect his plea. During Hadsell's testimony in the evidentiary hearing on his application for a writ of habeas corpus, he candidly stated his reason for pleading guilty:

I felt that not to accept a deal of that nature would make me a fool. I felt that it would be useless to go and fight while remaining in jail when I could have the same result by entering a plea of guilty which would never be a conviction.

It therefore conclusively appears that Hadsell was primarily concerned with receiving a deferred sentence to avoid a conviction. It was of no consequence to him whether the maximum penalty for second-degree burglary was 5 years or 15 years. He would nevertheless have pleaded guilty because the maximum term had nothing to do with his reasons for the guilty plea. Further, it must not be overlooked that the prosecutor's recommendation was carried out and a deferred sentence was entered. It was not

until the defendant's false statements as to identity were discovered and the deferred sentence revoked that he saw fit to petition to change his plea. Notably, at that time, he did not assert any lack of understanding as to the consequences of the plea he had entered. Nor is there any assertion or allegation contained in his petition for a writ of habeas corpus to the effect that he did not understand the consequences of his plea.

After reviewing all of the circumstances, we conclude that a defendant, who insists upon his right to represent himself and is provided legal counsel as an advisor but fails to determine the maximum penalty for the crime with which he is charged, cannot use his own failure to seek such information as a basis for error on appeal. In addition, the defendant's asserted ignorance as to the maximum penalty had no effect upon his plea and cannot be said to be prejudicial. *See Miesbauer v. Rhay, supra.*

However, the trial court erred in failing in its judgment of January 15, 1971, to give defendant credit for time served between November 18, 1969, the date of the first revocation hearing, and the subsequent revocation hearing held on January 15, 1971. *See State v. Shannon,* 60 Wn.2d 883, 376 P.2d 646 (1962). *See also* RCW 9.95.063. We therefore remand the January 15, 1971, judgment and sentence to the King County Superior Court for modification to reflect specifically credit for the time defendant served between the November 18, 1969, judgment and the January 15, 1971, judgment. In all other respects, the judgment is affirmed, and the order denying defendant Hadsell's writ of habeas corpus is affirmed.

FARRIS, A.C.J., and JAMES, J., concur.

Petition for rehearing denied June 5, 1972.

Review denied by Supreme Court August 18, 1972.