[No. 43995. En Banc. September 23, 1976.]

GLENN ELLIOTT WOOD, *Petitioner,* v. CHARLES MORRIS, *as Secretary of the Department of Social and Health Services,* ET AL, *Respondents.*

*Allen M. Ressler* and *Richard L. Phillips*, for petitioner.

*Slade Gorton, Attorney General,* and *William C. Collins, Assistant,* for respondents.

UTTER, J.—Glenn Elliott Wood, petitioner herein, was charged with first-degree murder in March 1974. An amended information was later filed, charging him with manslaughter while armed with a firearm. On May 17, 1974, petitioner pleaded guilty to the amended information and was sentenced by the court to the maximum term. Thereafter, the Board of Prison Terms and Paroles set his minimum sentence at 7½ years and, because the felony was committed while petitioner was armed with a firearm, *see* RCW 9.41.025, set a mandatory minimum sentence of 5 years. Petitioner now seeks nullification of the 5-year mandatory minimum, claiming he was not adequately informed of that consequence of his guilty plea before he entered it.

We adopt the rule that hereafter the record of the plea hearing must affirmatively disclose a guilty plea was made intelligently and voluntarily, with an understanding of the full consequences of such a plea. However, finding that petitioner *withdrew* his objection to the information provided him at the plea hearing, we affirm his conviction.

At petitioner's plea hearing, the trial court questioned petitioner as to his understanding of the following consequences of a guilty plea: that there would be no trial, that he would be found guilty and sentenced, that the maximum sentence was 20 years, that the court was not bound by any recommendation of the prosecutor, and that there would be no appeal. In addition, the following discussion took place:

MR. JOHNSON [Prosecuting Attorney]: Your Honor, if I may interpose: The information indicates that he was armed with a firearm as defined [in] RCW 9.41.025. That imposes in the case of this particular defendant a five year minimum, and he should be aware of that also at this time. THE COURT: Are you aware of that? MR. GOODWIN [defense counsel]: Your Honor, now this is something I must take issue with, if the Court please. On the report, since that was brought up, this was not discussed with—between Mr. Connelly [a prosecuting attorney] and myself when we entered into this agreement. No discussion was had, and, Mr. Connelly may correct me if I am in error about this, prior to this agreement that I should enter a plea on this matter to my client. Now, whatever the Court does on that, I suppose the court will have to decide that, but there was no discussion about that and it is my opinion that without specifically charging it so that you can ask for the penalty, case law of the State of Washington does not allow you to do that unless you ask for that specifically in the information, and merely stating that there is a deadly weapon or stating the fact of the weapon in this situation will not bring that about, but in any event I want to make it perfectly clear that it was not a part of the bargaining in this case. Now, we still stand on our plea, and I really am concerned about that because we are dealing with a 16 year old boy. I don't think—I think it is something that should be left entirely up to the parole board. I don't think it is necessary in this kind of case, if the Court please, and

this is something that really should be handled on sentencing, I suppose. That is—THE COURT: Mr. Goodwin, here again specifically to make the record: Can I assume that you and your client are acquainted with the RCW Section 9.41.025, and acquainted with the fact that the particular information alleges a shotgun? MR. GOODWIN: Yes, sir. THE COURT: And those are matters that can be considered? MR. GOODWIN: This has been read by my client, yes, but I want it emphatically stated that this was not brought to my attention that this would be sought in this case when we agreed to plead to this charge. Not until I got down here this morning; this afternoon rather, was this brought up by Mr. Johnson, so I just want that clear, that's all. I am aware, and I have advised my client that in some cases this could be sought. THE COURT: And, Mr. Wood, you have heard the discussion, first what Mr. Johnson said about a five year minimum. You have heard the comments of Mr. Goodwin, your counsel. You have heard the Court remind everyone of a particular citation in the Statute, and the fact that the information says, right in it, a shotgun. You have heard that? MR. WOOD: Yes, sir. THE COURT: Now, knowing all of these things that have been discussed here, and the fact that the court will be sentencing you, and the fact that there is no appeal whatsoever from any sentence within the law that the Court might impose, it is now your request that the Court accept the plea of guilty to the charge of Manslaughter? MR. WOOD: Yes, sir, it is.

In addition, the following colloquy took place:

MR. CONNELLY: Under the case law, I believe we are required to submit to Your Honor a special findings with reference to the firearm, and I am assuming that the man's plea of guilty to the information phrased and worded as it is, is sufficient basis upon which the court can make the necessary finding. In other words, he has pleaded guilty to the entire information in which it alleges that he shot and mortally wounded him with a firearm. Of course, it is in the statement that he shot him with a shotgun. MR. GOODWIN: I respectfully differ from counsel, but we are standing on our plea. We are not going to change the plea. This is something the Court has to decide, who is correct about that. MR. CONNELLY: It is a question of law. I will give the Court the case if he wants the case. THE COURT: Okay. MR. GOODWIN: We

don't wish to withdraw our plea. I think the plea is voluntary. We understood this when he pled that there was differences of opinion about it.

On the date of the plea hearing petitioner also signed a "Statement of Defendant on Plea of Guilty" which made no reference to a mandatory minimum sentence.

Two separate theories are urged by petitioner to compel a nullification of his mandatory minimum sentence. He argues that his plea was entered in violation of the constitutional requirements enunciated in *Boykin v. Alabama,* 395 U.S. 238, 23 L. Ed. 2d 274, 89 S. Ct. 1709 (1969), and the language of CrR 4.2. In *Boykin,* the court held it reversible error for a trial court to accept a guilty plea without an affirmative showing in the record that the plea was made intelligently and voluntarily. The court reasoned that entry of a guilty plea in a state criminal proceeding is a waiver of the federal constitutional rights to a trial by jury, to confront one's accusers, and the privilege against compulsory self-incrimination, and that a waiver of these rights cannot be presumed from a silent record. The court added "[w]hat is at stake for an accused facing death or imprisonment demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequences." *Boykin v. Alabama, supra* at 243-44.

We initially limited the application of *Boykin* in *Miesbauer v. Rhay,* 79 Wn.2d 505, 510, 487 P.2d 1046 (1971), where we distinguished the Supreme Court decision on the grounds that it involved a capital crime, a direct appeal, and prejudice to the defendant. However, it is now widely recognized that *Boykin* is to be applied without regard to such qualifications. *See, e.g., Roddy v. Black,* 516 F.2d 1380 (6th Cir. 1975); *Commonwealth v. Foster,* ............ Mass. ............, 330 N.E.2d 155 (1975); *In re Tahl,* 1 Cal. 3d 122, 460 P.2d 449, 81 Cal. Rptr. 577 (1969), *cert. denied,* 398 U.S. 911 (1970); *Higby v. Sheriff of Clark County,* 86 Nev. 774, 476 P.2d 959 (1970). *See generally* Annot., 97 A.L.R.2d 549 (1964). In *Miesbauer v. Rhay, supra* at 507, we reiterated the Wash-

ington rule that to be valid a guilty plea must be made voluntarily and with a knowledge of its consequences, but stated the establishment of these requirements was "a fact to be determined from all the circumstances." Our holding in *Miesbauer* has invited inquiry at the appellate level in post-conviction remedy cases as to whether or not a defendant in fact understood the nature and consequences of his plea. Often this inquiry has resulted in remands to the trial court for the taking of evidence and the entry of findings as to knowledge and voluntariness. *See, e.g., State v. Mitchell*, 2 Wn. App. 943, 472 P.2d 629 (1970); *State v. Hadsell*, 6 Wn. App. 946, 497 P.2d 254 (1972); *Miller v. Morris*, 10 Wn. App. 694, 519 P.2d 1314 (1974).

*Boykin v. Alabama, supra*, established as a matter of constitutional due process that a guilty plea may stand only if the record in some manner indicates an intelligent and voluntary waiver of the three enumerated constitutional rights. The trial judge's active participation in " 'canvassing the matter with the accused' " is also required. *In re Tahl, supra* at 130. However, the Supreme Court's opinion did not make clear whether the defendant must be specifically informed of the enumerated constitutional rights by the trial judge or whether evidence extrinsic to the record of the plea hearing may be considered by the reviewing court in determining if the constitutional standard has been satisfied. Consequently, the divisions of our Court of Appeals have not been in complete agreement as to whether or not the rule of *Miesbauer v. Rhay, supra*, is consistent with the constitutional requirements of *Boykin*. *Compare Miller v. Rhay*, 1 Wn. App. 1010, 1012, 466 P.2d 179 (1970) *with State v. White*, 5 Wn. App. 615, 616, 489 P.2d 934 (1971).

The affirmative record requirement of *Boykin* has been interpreted differently by different courts. It has been held as a matter of constitutional law that the necessary showing must appear on the face of the record of the plea hearing. *In re Tahl, supra* at 131-33; *Higby v. Sheriff of Clark County, supra* at 781; *see Commonwealth v. Foster, supra* at 159-60; *Commonwealth v. Godfrey*, 434 Pa. 532,

254 A.2d 923 (1969); *cf. State v. Piacella,* 27 Ohio St. 2d 92, 271 N.E.2d 852 (1971). We agree, however, with those courts, including a majority of the federal circuits, which construe the constitutional holding of *Boykin* to allow supplementation of an otherwise defective plea-taking record with evidence adduced in a post-conviction proceeding. *See, e.g., Todd v. Lockhart,* 490 F.2d 626, 628 (8th Cir. 1974); *McChesney v. Henderson,* 482 F.2d 1101, 1106 (5th Cir. 1973), *cert. denied,* 414 U.S. 1146 (1974); *United States v. Sherman,* 474 F.2d 303, 307 (9th Cir. 1973) (Hufstedler, J., dissenting on other grounds); *Wade v. Coiner,* 468 F.2d 1059, 1060 (4th Cir. 1972); *United States ex rel. Darrah v. Brierley,* 415 F.2d 9 (3d Cir. 1969); *State v. Darling,* 109 Ariz. 148, 152, 506 P.2d 1042 (1973); *Morgan v. State,* 287 A.2d 592, 598 (Me. 1972). As stated by the court in *Roddy v. Black, supra* at 1384:

> If the discussion between defendant and trial judge at the time of a plea's acceptance leaves doubt as to whether a plea was in fact voluntary and intelligent . . . a defendant is not automatically entitled to a reversal of his conviction. Rather, in that circumstance if a defendant argues in a post-conviction proceeding that his plea was entered without his consent or without an understanding of the plea's nature and consequences, *Boykin* places a burden on the State to prove the contrary.

To carry this burden, the State may introduce evidence extrinsic to the statement of facts of the plea's acceptance. In the face of an inadequate statement of facts of the plea hearing, the State must make "a clear and convincing showing that the plea was in fact knowingly and understandingly entered." *Roddy v. Black, supra* at 1384.

Similarly, while it has been held that a defendant's constitutional rights to a jury trial, confrontation and protection against self-incrimination must be specifically and expressly enumerated by the trial judge and expressly waived by the accused prior to acceptance of a guilty plea, *see In re Tahl, supra* at 131-33, *Higby v. Sheriff of Clark County, supra* at 781, we adopt an interpretation of *Boykin*

which does not impose this requirement as a matter of constitutional due process. This is the view of the majority of courts which have considered the question. *See, e.g., McChesney v. Henderson, supra* at 1106-10; *United States v. Sherman, supra* at 305; *Stinson v. Turner,* 473 F.2d 913, 915-16 (10th Cir. 1973); *Wade v. Coiner, supra* at 1061; *State v. Turner,* 186 Neb. 424, 425, 183 N.W.2d 763 (1971); *People v. Kuchulan,* 390 Mich. 701, 704, 213 N.W.2d 95 (1973); *Commonwealth v. Morrow,* 363 Mass. 601, 296 N.E.2d 468, 472-73 (1973); *Merrill v. State,* 87 S.D. 285, 290, 206 N.W.2d 828 (1973). Supreme Court decisions subsequent to *Boykin* make this clear. In *Brady v. United States,* 397 U.S. 742, 25 L. Ed. 2d 747, 90 S. Ct. 1463 (1970), and *North Carolina v. Alford,* 400 U.S. 25, 27 L. Ed. 2d 162, 91 S. Ct. 160 (1970), the court, citing *Boykin,* upheld guilty pleas without any indication that specification of the three constitutional rights enumerated in *Boykin* was required to be made at the time of the acceptance of the pleas. We also note that in both cases the court relied upon evidence received at post-conviction hearings. We hold, therefore, that there is no constitutional requirement that there be express articulation and waiver of the three rights referred to in *Boykin* by the defendant at the time of acceptance of his guilty plea if it appears from the record, and the clear and convincing weight of extrinsic evidence if the record is unclear on the matter, that the accused's plea was intelligently and voluntarily made, with knowledge of its consequences.

In addition to the minimum requirements imposed by the constitution in Washington, as in other jurisdictions, *see, e.g., People v. Kuchulan, supra,* criminal pleas are also governed by rules of court. CrR 4.2,[1] effective July 1, 1973, establishes requirements beyond the constitutional mini-

---

[1]CrR 4.2 provides in part:

"**(d) Voluntariness.** The court shall not accept a plea of guilty, without first determining that it is made voluntarily, competently and with an understanding of the nature of the charge and the consequences of the plea. The court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea."

mum. This rule is modeled on Federal Rule of Criminal Procedure 11.[2] In its comment to proposed CrR 4.2(c), now

[2]At the time of the adoption of CrR 4.2, Federal Rule of Criminal Procedure 11 provided:

A defendant may plead not guilty, guilty or, with the consent of the court, *nolo contendere*. The court may refuse to accept a plea of guilty, and shall not accept such plea or a plea of *nolo contendere* without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea. If a defendant refuses to plead or if the court refuses to accept a plea of guilty or if a defendant corporation fails to appear, the court shall enter a plea of not guilty. The court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea.

Fed. R. Crim. P. 11 (1970).

Rule 11 has been subsequently amended by order of the Supreme Court, April 22, 1974, and an act of Congress, July 31, 1975, 89 Stat. 371, 372, effective December 1, 1975 (except subdivision (e)(6), effective August 1, 1975) to provide in part:

(c) Advice to Defendant. Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform him of, and determine that he understands, the following:

(1) the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law; and

(2) if the defendant is not represented by an attorney, that he has the right to be represented by an attorney at every stage of the proceeding against him and, if necessary, one will be appointed to represent him; and

(3) that he has the right to plead not guilty or to persist in that plea if it has already been made, and that he has the right to be tried by a jury and at that trial has the right to the assistance of counsel, the right to confront and cross-examine witnesses against him, and the right not to be compelled to incriminate himself; and

(4) that if he pleads guilty or nolo contendere there will not be a further trial of any kind, so that by pleading guilty or nolo contendere he waives the right to a trial; and

(5) that if he pleads guilty or nolo contendere, the court may ask him questions about the offense to which he has pleaded, and if he answers these questions under oath, on the record, and in the presence of counsel, his answers may later be used against him in a prosecution for perjury or false statement.

(d) Insuring That the Plea is Voluntary. The court shall not accept a plea of guilty or nolo contendere without first, by addressing the defendant personally in open court, determining that the

CrR 4.2(d), the Washington Criminal Rules Task Force stated "[t]his section is essentially a paraphrasing of Federal Rule of Criminal Procedure 11. The Task Force made some minor changes, but the intention was to follow Rule 11." *Washington Proposed Rules of Criminal Procedure* 48 (1971).

Prior to the drafting and adoption of CrR 4.2, the Supreme Court construed the federal counterpart of CrR 4.2 in *McCarthy v. United States*, 394 U.S. 459, 22 L. Ed. 2d 418, 89 S. Ct. 1166 (1969). The court held that rule 11 mandates the trial judge's direct inquiry of a defendant pleading guilty as to whether the accused understands the nature of the charge against him and is aware of the consequences of his plea. Writing for the court, Chief Justice Warren reasoned that such a conclusion follows from the two purposes of the rule. First, the rule is intended to assist the trial judge in the constitutionally required determination of voluntariness. Second,

> the Rule is intended to produce a complete record at the time the plea is entered of the factors relevant to this voluntariness determination. Thus, the more meticulously the Rule is adhered to, the more it tends to discourage, or at least to enable more expeditious disposition of, the numerous and often frivolous post-conviction attacks on the constitutional validity of guilty pleas.

*McCarthy v. United States, supra* at 465.

---

plea is voluntary and not the result of force or threats or of promises apart from a plea agreement. The court shall also inquire as to whether the defendant's willingness to plead guilty or nolo contendere results from prior discussions between the attorney for the government and the defendant or his attorney.

. . .

(f) Determining Accuracy of Plea. Notwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea.

(g) Record of Proceedings. A verbatim record of the proceedings at which the defendant enters a plea shall be made and, if there is a plea of guilty or nolo contendere, the record shall include, without limitation, the court's advice to the defendant, the inquiry into the voluntariness of the plea including any plea agreement, and the inquiry into the accuracy of a guilty plea.

Fed. R. Crim. P. 11 (1975).

 In light of the clearly expressed intent of the framers of CrR 4.2 to follow rule 11, we conclude that our rule of court should be construed as its model had been construed prior to the drafting and adoption of the Washington rule. CrR 4.2 was designed to accomplish the same two purposes stated by the Supreme Court in *McCarthy v. United States, supra.* Thus, the trial judge must make direct inquiries of the defendant as to whether he understands the nature of the charge and the full consequences of a guilty plea. Although not required by the constitution as we read *Boykin v. Alabama, supra,* under our rule of court the record of the plea hearing, unsupplemented by any evidence extrinsic to that record, must show on its face that the plea was entered voluntarily and intelligently. When ascertainment of knowledge and voluntariness is made at a later post-conviction hearing, "greater uncertainty is bound to exist since in the resolution of disputed contentions problems of credibility and of reliability of memory cannot be avoided. . . .' . . . There is no adequate substitute for demonstrating *in the record at the time the plea is entered* the defendant's understanding of the nature of the charge against him." *McCarthy v. United States, supra* at 470.

In addition, failure to comply fully with CrR 4.2 requires that the defendant's guilty plea be set aside and his case remanded so that he may plead anew. The same result was reached in *McCarthy* at page 471, in which the court concluded "that prejudice inheres in a failure to comply with Rule 11." We agree with the Supreme Court that such a result will "help reduce the great waste of judicial resources required to process the frivolous attacks on guilty plea convictions that are encouraged, and are more difficult to dispose of, when the original record is inadequate." *McCarthy v. United States, supra* at 472. The slight burden imposed on trial judges by these requirements is more than outweighed by the benefits noted above, particularly in

light of the enormous role guilty pleas play in our criminal justice system.[3]

The circumstances of the present case indicated the kind of confusion which will be alleviated by strict adherence to the requirements of CrR 4.2 as stated above. At the plea hearing the prosecuting attorney stated petitioner was subject to a mandatory 5-year term, but his then defense counsel disagreed with this conclusion, in part because he apparently believed it was an erroneous statement of the law. The court failed to indicate which view was correct although it did ask petitioner and his counsel whether they were familiar with RCW 9.41.025. Although defense counsel answered affirmatively, he was apparently mistaken as to the statute's effect inasmuch as he advised petitioner "that in some cases this could be sought," and since he later referred to possible probation, a suspended sentence and a 1-year sentence for his client. Taken out of context it could also be argued the court did not clearly state the effect of the firearm allegation as it indicated that allegation in RCW 9.41.025 was a matter that could be "considered." The statute provides "the court *shall impose* a sentence of not less than five years, which sentence *shall not* be suspended or deferred." (Italics ours.) RCW 9.41.025(1). Although petitioner's counsel later indicated he disagreed with the prosecutor's statement of the effect of the guilty plea on the court's statutory mandate to impose the minimum 5-year sentence, he indicated "but we are standing on our plea. We are not going to change the plea. This is something the Court has to decide, who is correct about that." In addition, petitioner signed a "Statement of Defendant on Plea of Guilty" but contrary to CrR 4.2(g) the form did not include the portion referring to a mandatory minimum

---

[3]Although reliable statistical information is limited, one estimate indicates that guilty pleas account for the disposition of as many as 95 percent of all criminal cases. ABA Project on Standards for Criminal Justice, *Standards Relating to Pleas of Guilty* (Approved Draft 1968) 1-2.

sentence.[4] The statement thus left petitioner with the information that the minimum term was to be set by the Board of Prison Terms and Paroles.

 It should also be made clear that a mandatory minimum term is a direct consequence of a guilty plea of which the accused must be informed prior to entering his plea. The Washington Criminal Rules Task Force stated that "[t]he consequences of a guilty plea should be explained to the defendant. This would include: informing the defendant . . . that there is a minimum sentence . . ." *Washington Proposed Rules of Criminal Procedure* 48, 49 (1971); *accord*, ABA Project on Standards for Criminal Justice, *Standards Relating to Pleas of Guilty* § 1.4(c)(ii) (Approved Draft 1968). Our Court of Appeals has indicated that minimum sentences are consequences of a guilty plea of which the accused should be properly informed. *Miller v. Morris*, 10 Wn. App. 694, 695-96, 519 P.2d 1314 (1974); *State v. Harvey*, 5 Wn. App. 719, 723-25, 491 P.2d 660 (1971). Similarly, the prevailing view in the federal courts is that special parole terms or ineligibility for parole flowing from a conviction are consequences of a guilty plea under rule 11. *See, e.g., Gates v. United States*, 515 F.2d 73 (7th Cir. 1975); *United States v. Richardson*, 483 F.2d 516 (8th Cir. 1973); *Munich v. United States*, 337 F.2d 356 (9th Cir. 1964); *cf. Bachner v. United States*, 517 F.2d 589 (7th Cir. 1975); *but see Fernandez v. United States*, 492 F.2d 771 (5th Cir. 1974); *see generally* Annot., 8

---

[4]CrR 4.2 provides in part:

"(g) **Written Statement.** A written statement of the defendant in substantially the form set forth below shall be filed on a plea of guilty:

". . .

"12. The court has told me that if I am sentenced to prison the Judge must sentence me to the maximum term required by the law, which in this case is ―――――――――. The minimum term of sentence is set by the Board of Prison Terms and Paroles. The Judge and Prosecuting Attorney may recommend a minimum sentence to the Board but the Board does not have to follow their recommendation. I have been further advised that the crime with which I am charged carries a mandatory minimum of ―――― years. (If not applicable, this sentence shall be stricken and initialed by the defendant and the judge.)"

A.L.R. Fed. 760 (1971). Of course, any statement by the trial judge on the consequences of a plea must be accurate. *Lutton v. Smith*, 8 Wn. App. 822, 509 P.2d 58 (1973); *State v. Harvey, supra.*

As we indicated at the outset, the interpretation of *Boykin* and CrR 4.2 stated herein should be given prospective application only. This is true because our holding in *Miesbauer v. Rhay*, 79 Wn.2d 505, 487 P.2d 1046 (1971), was not clearly overruled by either the *Boykin* decision or our adoption of CrR 4.2. In considering whether a new constitutional rule[5] should be limited to prospective application, we have adopted the approach of the Supreme Court. *Brumley v. Charles R. Denney Juvenile Center*, 77 Wn.2d 702, 466 P.2d 481 (1970). The pertinent factors are the purpose of the new rule, the extent to which law enforcement agencies and courts have justifiably relied upon the preexisting rule, and the effect of retroactive application upon the administration of justice. *Brumley v. Charles R. Denney Juvenile Center, supra* at 707. In similar circumstances and applying the same criteria, the Supreme Court denied retroactivity to *McCarthy v. United States, supra*, and its construction of the federal rule governing guilty pleas. *Halliday v. United States*, 394 U.S. 831, 23 L. Ed. 2d 16, 89 S. Ct. 1498 (1969). Other courts have reached the same conclusion in adopting new principles regarding the acceptance of guilty pleas. *See, e.g., In re Tahl*, 1 Cal. 3d 122, 133-35, 460 P.2d 449, 81 Cal. Rptr. 577 (1969); *People v. Kuchulan*, 390 Mich. 701, 703, 213 N.W.2d 95 (1973). In light of *Miesbauer v. Rhay, supra*, we believe trial courts could have justifiably relied on its holding as stating the rule to be followed in this state if CrR 4.2 was not complied with. To hold out the possibility of invalidating countless guilty pleas months and years after their acceptance

---

[5]The Supreme Court has found it appropriate to analyze the retroactivity of decisions construing the federal rules in terms of the same criteria employed to determine whether constitutionally grounded decisions which depart from precedent should be applied retroactively. *Halliday v. United States*, 394 U.S. 831, 832, 23 L. Ed. 2d 16, 89 S. Ct. 1498 (1969).

unquestionably would have an adverse impact on the administration of justice in Washington. Therefore, we conclude the requirements of the constitution and court rule as set forth above must be applied only to guilty pleas entered subsequent to the date of the filing of this opinion.

In the present case, petitioner's counsel initially objected to the imposition of a 5-year mandatory minimum. The thrust of his argument was that the mandatory minimum had not been mentioned during plea bargaining, stating, "I just want that clear, that's all." Following further discussion about the effect of the firearm allegation, over which counsel disagreed, petitioner's counsel reaffirmed the guilty plea: "[W]e are standing on our plea. We are not going to change the plea. This is something the Court has to decide, who is correct about that. . . . We understood this when he pled that there was differences of opinion about it." These statements clearly indicate that petitioner's position did not depend on the ultimate disposition of the minimum term issue by the court. Electing to reaffirm his plea despite his earlier objection, petitioner in effect withdrew his objection to the information provided at the plea hearing and, thus, did not preserve the question for our review. *See Wise v. Farden*, 53 Wn.2d 162, 165, 332 P.2d 454 (1958); *Fleming v. Seattle*, 45 Wn.2d 477, 484, 275 P.2d 904 (1954).

Judgment affirmed.

STAFFORD, C.J., and ROSELLINI, HUNTER, HAMILTON, WRIGHT, BRACHTENBACH, and HOROWITZ, JJ., concur.