[Nos. 29461-3-II; 29314-5-II.  Division Two.  December 9, 2003.]

THE STATE OF WASHINGTON, *Respondent*, v. DEAN ALLEN ADAMS, *Appellant*.

*In the Matter of the Personal Restraint of* DEAN ALLEN ADAMS, *Petitioner*.

---

*Linda J. King*, for appellant/petitioner.

*Gerald A. Horne, Prosecuting Attorney*, and *Alicia M. Burton* and *Kathleen Proctor, Deputies*, for respondent.

BRIDGEWATER, J. — Dean Allen Adams appeals the convictions that followed his guilty plea to three sex crimes. He asserts that mistaken advice he received regarding his Special Sex Offender Sentencing Alternative (SSOSA) eligibility rendered his guilty plea involuntary. He urges us to reverse and allow an election of remedies—plea withdrawal or specific enforcement—on remand. We hold that Adams is

entitled to plea withdrawal because the inaccurate advice as to SSOSA eligibility could have and did affect his decision to plead guilty, thus rendering the guilty plea involuntary. We reverse.

By amended information, Pierce County charged Adams with two counts of first degree child rape and one count of second degree assault with sexual motivation. The crimes were alleged to have occurred between December 3, 1991, and December 3, 1994.

Adams ultimately pleaded guilty to the crimes charged in the amended information. As part of his plea, however, the State agreed to recommend a SSOSA (former RCW 9.94A.120(7) (1994)) disposition provided that Adams satisfied several presentence requirements, including obtaining a sexual deviancy evaluation. Adams eventually was evaluated by two licensed psychologists, Mark Whitehill, PhD and Vincent Gollogly, PhD.

Sentencing was delayed several times to allow time for Adams's evaluation. When sentencing finally occurred on September 19, 2001, the State recommended a standard range sentence rather than SSOSA, asserting that Dr. Whitehill was not a permissible evaluator under the plea agreement's terms. The trial court imposed a standard range sentence that exceeded the State's recommendation by six months.

Sometime after sentencing, the parties discovered that they were mistaken as to Adams's SSOSA eligibility. Apparently, the parties had judged Adams's eligibility under the 2000 SSOSA statute, RCW 9.94A.670. This version required that "[t]he offender's standard sentence range for the offense includes the possibility of confinement for less than eleven years." Former RCW 9.94A.670(2)(c) (2000). As the low end of the standard range for Adams's crimes was less than 11 years, he appeared to be eligible under the 2000 statute. But under RCW 9.94A.345, SSOSA eligibility must be judged under the "law in effect when the current offense was committed." Therefore, in Adams's case, the applicable SSOSA statute was the one in effect in 1994. And

former RCW 9.94A.120(7)(a)(ii) (1994) required a standard range sentence of less than eight years. As Adams's standard range was greater than eight years, he was ineligible for SSOSA.

For this appeal, we have consolidated Adams's personal restraint petition and his direct appeal.

I

Adams asserts that his guilty plea was involuntary because both he and the State were mistaken as to his eligibility for SSOSA. The remedy, according to Adams, is remand to allow withdrawal or specific enforcement of the plea, whichever he prefers. The State concedes the mistake, arguing instead that Adams's convictions should be affirmed because he was not prejudiced.

■ Pleas are governed generally by CrR 4.2. CrR 4.2(d) commands that "[t]he court shall not accept a plea of guilty, without first determining that it is made voluntarily, competently and with an understanding of the nature of the charge and the consequences of the plea." But the court must allow plea withdrawal if necessary to correct a manifest injustice. CrR 4.2(f). "Nonexclusive criteria as to what constitutes manifest injustice include (1) the denial of effective counsel; (2) the defendant or one authorized by the defendant did not ratify the plea; (3) the plea was involuntary; or (4) the prosecution breached the plea agreement." *State v. Walsh*, 143 Wn.2d 1, 6, 17 P.3d 591 (2001).

■ A defendant's decision to plead guilty must be knowing, voluntary, and intelligent. *State v. Ross*, 129 Wn.2d 279, 284, 916 P.2d 405 (1996); *In re Pers. Restraint of Barr*, 102 Wn.2d 265, 269, 684 P.2d 712 (1984); *Wood v. Morris*, 87 Wn.2d 501, 507, 554 P.2d 1032 (1976); *State v. Aaron*, 95 Wn. App. 298, 302, 974 P.2d 1284, *review denied*, 139 Wn.2d 1002 (1999). To plead knowingly, voluntarily, and intelligently, a defendant must be informed of and understand direct, but not collateral, sentencing consequences. *State v. Kissee*, 88 Wn. App. 817, 821, 822, 947 P.2d

262 (1997). SSOSA eligibility is a direct sentencing conse-
quence. *See Kissee*, 88 Wn. App. at 822.

■ But that a sentencing consequence is "direct" is no
longer sufficient, standing alone, to render the plea invalid.
The defendant must also show that the misinformation
materially affected his decision to plead guilty. *State v.
McDermond*, 112 Wn. App. 239, 247, 47 P.3d 600 (2002)
(discussing *State v. Oseguera Acevedo*, 137 Wn.2d 179, 970
P.2d 299 (1999)). Thus, we ask "(1) [w]as the defendant
incompletely or inaccurately advised about one or more
consequences of the plea? (2) [c]ould the defective advice
have materially affected the defendant's decision to plead
guilty? [and] (3) [d]id the defective advice materially affect
the defendant's decision to plead guilty?" *McDermond*, 112
Wn. App. at 248.

■ There is no question that Adams was inaccurately
advised; in fact, the record reflects that his counsel, the
prosecutor, and the trial court all mistook Adams's SSOSA
eligibility. And there is also little room for debate as to
whether the misinformation could have and did affect
Adams's decision. Without a SSOSA disposition, Adams
was facing 120-158 months in prison. Given this potentially
lengthy term, we are constrained to acknowledge that
Adams might not have pleaded guilty if he had known that
he was SSOSA ineligible, choosing instead the uncertain-
ties of a full jury trial.

Acknowledging these three points, the State maintains
that the mistake was not prejudicial. The logic is that,
because the trial court imposed a standard range sentence
while under the belief that Adams was SSOSA eligible, it
would not have acted differently had it known of Adams's
ineligibility. Therefore, the State argues, "[t]he outcome of
the sentencing hearing was not affected." Br. of Resp't at 15.
We disagree.

First, it is inconsequential what the outcome of Adams's
sentencing hearing would have been had the trial court
known the true status of Adams's eligibility. Rather, the
critical point is that Adams may not have *had* a sentencing

hearing if he had known of his ineligibility because he might have elected to go to trial rather than plead guilty. It is only because of the incorrect advice that Adams was even at the sentencing phase.

Second, requiring Adams to prove that the trial court's decision was affected by the misinformation would improperly compound his burden of proof. As is evident in *McDermond*'s third factor, which asks whether the misinformation *actually and materially affected the decision to plead*, prejudice is already required. If the misinformation did affect the decision, then it was prejudicial because it prevented a course of action—i.e., proceeding to trial—that the defendant might otherwise have taken if not for the mistake.

Because the misinformation as to Adams's SSOSA eligibility actually and materially affected his decision to plead guilty, we reverse the trial court, rendering analysis of Adams's other claims unnecessary.

## II

Adams asks us to remand with instructions that he be permitted to withdraw his plea or pursue specific enforcement and force the State to recommend SSOSA even though the trial court would be statutorily prohibited from imposing it. In support of the specific enforcement option, Adams cites *State v. Miller*, which recognized that a plea agreement term may be enforceable even if the term conflicts with governing law. *State v. Miller*, 110 Wn.2d 528, 532, 756 P.2d 122 (1988); *see also State v. Henderson*, 99 Wn. App. 369, 993 P.2d 928 (2000); *State v. Cosner*, 85 Wn.2d 45, 530 P.2d 317 (1975). This principle is generally driven by the primacy of a defendant's constitutional rights over statutory provisions. *See Miller*, 110 Wn.2d at 533; *see also In re Pers. Restraint of James*, 96 Wn.2d 847, 849, 640 P.2d 18 (1982).

We recognize the *Miller* principle but distinguish it. *Miller* held that the trial court incorrectly precluded the

defendant's election of remedies under a plea agreement that allowed the defendant to argue for a sentence below the mandatory minimum. That the statutory minimum did not contemplate a sentence that the plea agreement enabled was no bar to specific enforcement. Thus, the plea agreement effectively broadened the trial court's sentencing range. *Accord Cosner*, 85 Wn.2d at 51-52 (mandatory minimum terms reduced to the length that defendants expected to receive under plea agreement).

Here, in contrast, Adams's sentencing range cannot be broadened to include the SSOSA program because he is not SSOSA eligible. Thus, the trial court could not impose the SSOSA alternative on remand even if we required the State to honor its promised SSOSA recommendation. A disposition enabling specific enforcement of the State's recommendation would therefore be futile and meaningless. Accordingly, we reverse Adams's convictions and remand the cause with instructions that he be permitted to withdraw his plea unless the State can prove that withdrawal would be unfair. *See Miller*, 110 Wn.2d at 535 ("the defendant's choice of remedy controls, unless there are compelling reasons not to allow that remedy"); *see also, e.g., In re Pers. Restraint of Baca*, 34 Wn. App. 468, 662 P.2d 64 (1983) (It may be unfair to allow defendant's choice of remedy if the defendant's misinformation contributed to the plea agreement violation.).

Reversed.

MORGAN and SEINFELD, JJ., concur.