# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 51777-9-II |
| Appellant/Cross-Respondent, | |
| v. | |
| CORY PRATT, | PUBLISHED OPINION |
| Respondent/Cross-Appellant. | |

MELNICK, J. — The superior court sentenced Cory Pratt under the special sex offender sentencing alternative (SSOSA). The State appeals the SSOSA sentence. It argues that Pratt did not qualify for this sentencing option because he did not have the required statutory connection with the victim to qualify for a SSOSA sentence.

Pratt cross-appeals and argues that the court abused its discretion in excluding proposed expert testimony about the phenomena of sexsomnia to support Pratt's defense. He argues that this exclusion violated his Sixth Amendment right to the United States Constitution to present a defense.

We affirm the conviction and remand for resentencing.

FACTS

The State charged Cory Pratt with child molestation in the first degree based on an allegation by MB that Pratt had sexually assaulted her while they were both sleeping in a tent for her cousin's birthday sleepover party.[1] The party occurred at the home of Pratt's aunt and uncle. MB is the daughter of Pratt's aunt's stepsister.

Before trial, Dr. C. Kirk Johnson, a psychologist, evaluated Pratt to determine if he suffered from a sleep disorder called sexsomnia. Sexsomnia is an abnormal activity, similar to sleepwalking, that involves people engaging in sexual acts during sleep. Johnson concluded that a possible explanation for Pratt's actions included sexsomnia, but he could not confirm it happened. Johnson further concluded that no psychological evaluation could determine if a particular behavior did or did not occur. Johnson reported that Pratt completely denied engaging in the alleged conduct and "[r]egarding sexsomnia, Mr. Pratt does not feel that this is the case, saying that this has not been a past problem." Clerk's Papers (CP) at 201.

At a pretrial evidentiary hearing, Pratt indicated he wanted Johnson to testify as an expert at trial about sexsomnia. Although Johnson could not conclude that Pratt had the disorder, he would testify that sexsomnia exists. Pratt wanted to use this testimony to support his general denial defense. Pratt wanted to argue at trial that if a person is asleep, they cannot be guilty because any touching would not have been done for the purpose of sexual gratification.[2] Pratt viewed being asleep as a general denial.

---

[1] Pratt was also charged with attempted child molestation in the first degree. The court dismissed the charge without prejudice as a lesser included crime pursuant to double jeopardy.

[2] Sexual gratification is not an element of child molestation in the first degree, but it is a definition that clarifies the meaning of the element "sexual contact." *State v. Lorenz*, 152 Wn.2d 22, 36, 93 P.3d 133 (2004); RCW 9A.44.083.

The State moved to exclude the testimony on grounds of relevance. The trial court expressed concern that calling an expert to testify about sexsomnia could amount to "a back door diminished capacity." Report of Proceedings (RP) (Sept. 19, 2017) at 65. The trial court granted the State's motion to exclude.

The case proceeded to trial where the testimony established the following: The young guests at the party slept in a tent set up in the back yard. Pratt attended the party with his daughter, who had requested that Pratt sleep in the tent with her because she was scared. The day after the sleepover, MB told her parents that she had woken up to Pratt touching her.

MB's parents reported the touching and an investigator from the Children's Justice Center (CJC) conducted a taped interview with her. In that interview, MB told the investigator that she had never met Pratt and had never met his daughter until the party.

An investigator also conducted a taped interview with Pratt. Pratt stated that he may have met MB's family years ago, because his aunt and uncle have had "get togethers" that included MB's parents, but he could not say with certainty if their children had also attended. RP (Oct. 2, 2017) at 118. When asked if he had any interaction with MB at the party before the guests went to bed, Pratt replied "Not really. About the most I had was . . . I handed out the skewers that had the marshmallows on . . . handing that to her was about the most that I had with her." RP (Oct. 2, 2017) at 118. When asked if he had any conversations with MB, Pratt replied "Not really" but on the day after the party, she sat near him and he thinks he asked her name. RP (Oct. 2, 2017) at 118-19.

Several witnesses also testified to the relationship between MB and Pratt. Pratt's aunt said MB met Pratt but she did not know when. She added that she and her long time husband saw Pratt often because he always received invitations to parties. However, she did not know if Pratt and

MB had "really talked to each other ever." RP (Oct. 2, 2017) at 135. Pratt's aunt told the jury that MB's parents may have said "hi and bye" to Pratt but otherwise she didn't think they ever really had a conversation with each other. RP (Oct. 2, 2017) at 136.

MB's mother did not know Pratt, never interacted with him, never had a conversation with him, and never met him. To her knowledge, they had never been at a gathering at the same time, and Pratt had never met her husband. To her knowledge, MB had never had any interaction with Pratt. To his knowledge, MB's father had never met or spoken to Pratt nor had his daughter.

Pratt, on the other hand, conclusively remembered meeting MB's parents at a specific party before the alleged incident. He did not, however, remember meeting MB before the sleepover.

Pratt waived a jury and the court found Pratt guilty of child molestation in the first degree.

Over the State's and the victim's objections, the court imposed a SSOSA disposition. The court entered findings of fact regarding the SSOSA sentence.[3] The factual findings included that "the Defendant knew of the Victim, and had been acquainted with the Victim's family," and that "the Victim and Defendant had contact during the course of said party other than the actions that constitute the crime herein." CP at 99.

The State appealed the sentence. Pratt cross-appealed the exclusion of Johnson's testimony.

---

[3] "The court shall give great weight to the victim's opinion" on whether a defendant should receive treatment under SSOSA. When the SSOSA disposition is given contrary to the victim's opinion, the court shall enter written findings stating its reasons for imposing such a sentence. RCW 9.94A.670(4).

ANALYSIS

I.    IMPOSITION OF SSOSA

The State can appeal a sentence that is based on an erroneous legal conclusion or that is imposed contrary to law. *State v. Willhoite*, 165 Wn. App. 911, 914, 268 P.3d 994 (2012). A party may also challenge the underlying facts and legal conclusions relied on by the court in imposing a sentencing option. *Willhoite*, 165 Wn. App. at 914. Additionally, RAP 2.2(b)(6)(C) allows the state to appeal a criminal sentence that "includes provisions that are unauthorized by law."

The SSOSA statute states in relevant part:

(2) An offender is eligible for the special sex offender sentencing alternative if:

(a) The offender has been convicted of a sex offense other than a violation of RCW 9A.44.050 or a sex offense that is also a serious violent offense.
. . . .

(e) The offender had an established relationship with, or connection to, the victim such that the sole connection with the victim was not the commission of the crime

RCW 9.94A.670.

A.    Eligibility for a SSOSA Sentence

The State argues that substantial evidence does not support the trial court's factual findings that Pratt had been acquainted with MB's family and that Pratt and MB had contact at the party, other than the molestation. Because the factual findings were not supported by substantial evidence, the court erred in finding that Pratt had a connection to the victim such that the sole connection with the victim was not the commission of the crime. Connection with the victim is a statutory requirement for an offender to be eligible for a SSOSA sentence; therefore, the court erred in granting the SSOSA sentence.

5

1.	Legal Principles

Appellate review of a trial court's findings of fact and conclusions of law is limited to determining whether the trial court's findings of fact are supported by substantial evidence in the record and, if so, whether the conclusions of law are supported by those findings of fact. *Scott v. Trans-Sys. Inc.*, 148 Wn.2d 701, 707-08, 64 P.3d 1 (2003). Substantial evidence is evidence sufficient to persuade a fair-minded, rational person of the finding's truth. *State v. Stevenson,* 128 Wn. App. 179, 193, 114 P.3d 699 (2005).

A trial court cannot impose a SSOSA sentence if the defendant does not meet the statutory criteria. *State v. Adams*, 119 Wn. App. 373, 376-77, 82 P.3d 1195 (2003); RCW 9.94A.670(2). We review eligibility for a SSOSA sentence de novo, because it is a matter of statutory interpretation. *State v. Landsiedel*, 165 Wn. App. 886, 889, 269 P.3d 347 (2012).

We employ statutory interpretation "'to determine and give effect to the intent of the legislature.'" *State v. Evans*, 177 Wn.2d 186, 192, 298 P.3d 724 (2013) (quoting *State v. Sweany*, 174 Wn.2d 909, 914, 281 P.3d 305 (2012)). To determine legislative intent, we first look to the plain language of the statute considering the text of the provision in question, the context of the statute, and the statutory scheme as a whole. *Evans*, 177 Wn.2d at 192. If the plain language of the statute is susceptible to more than one reasonable interpretation, the statute is ambiguous. *State v. Ervin*, 169 Wn.2d 815, 820, 239 P.3d 354 (2010). We first attempt to resolve the ambiguity and determine the legislature's intent by resorting to other indicia of legislative intent, including legislative history, and relevant case law. *Ervin,* 169 Wn.2d at 820.

2.    Analysis

At issue are the court's findings that "the Defendant knew of the Victim, and had been acquainted with the Victim's family" and that "the Victim and Defendant had contact during the course of said party other than the actions that constitute the crime herein."  CP at 99.[4]

There is conflicting evidence whether Pratt was "acquainted" with MB's family.  In the interview with CJC, when asked if he had met MB before, Pratt said that he may have met the family years ago, but he could not be certain if their children had also attended.  At trial, he stated conclusively that he remembered meeting MB's parents at a specific party before the incident.  Pratt said that he played volleyball with MB's father at the party.  He stated that he did not remember meeting MB before the sleepover.

Both MB's mother and father testified that neither they nor their daughter had ever met or spoken to Pratt.  However, Pratt's aunt stated that they had met, even if it was "hi and bye."  MB told the investigator that she had never met Pratt and had never met his daughter.

In regard to Pratt and MB's interaction at the party, Pratt admitted he had "handed out the skewers that had the marshmallows on . . . handing that to her was about the most that I had with her."  RP (Oct. 2, 2017) at 118.  He also testified that the day after the party, she was sitting near him and he thinks he asked her what her name was.  MB told the CJC investigator that she had "tried not to" talk to him the day after the incident.  RP (Oct. 2, 2017) at 296

Although the evidence is minimal and conflicting, it is sufficient to persuade a fair-minded rational person that "the Defendant knew of the Victim, and had been acquainted with the Victim's family," and that "the Victim and Defendant had contact during the course of said party other than

---

[4] Although the SSOSA statute addresses the relationship between the offender and the victim, RCW 9.94A.670, the court's findings addressed the relationship between the offender and the victim's family.  As such, we review the findings for substantial evidence.

the actions that constitute the crime herein." CP at 99. We determine that the findings of fact are supported by substantial evidence.

Having made that determination, we next review de novo if the conclusions of law are supported by the findings of fact. We conclude that the conclusion of law, that Pratt had a connection to the victim such that the sole connection to the victim was not the commission of the crime, does not flow from the findings of fact.

To be eligible for a SSOSA sentence, Pratt must have a connection with MB independent of the crime. The statute requires that "[t]he offender had an established relationship with, or connection to, the victim such that the sole connection with the victim was not the commission of the crime." RCW 9.94A.670(2)(e). None of the court's findings of fact establish this required connection.

RCW 9.94A.670(2)(e) is susceptible to two possible interpretations. The word "established" could either modify only "relationship" or it could modify both "relationship" and "connection." We conclude the word "established" modifies both "relationship" and "connection," meaning that the statute requires an "established relationship with" or an "established connection to" the victim.

In this case, it is clear that Pratt did not have an "established connection," with MB.[5] Pratt and MB met for the first time at the party. Other than the sexual molestation, their only connections involved Pratt giving MB a skewer with marshmallows and asking MB her name.

---

[5] Neither party argues that Pratt and MB had an established relationship. Neither the record nor the findings of fact would support such a conclusion.

While we interpret the statute as indicated above, we recognize that even if "established" does not modify "connection," Pratt and MB's connection is too attenuated to satisfy the statutory requirement and Pratt is ineligible for a SSOSA disposition.

In interpreting the SSOSA eligibility statute under this alternative, we first look to the dictionary, which defines connection as "a person connected with others by marriage, remote blood relationship, or such a tie as a common interest." WEBSTER'S THIRD NEW INT'L DICTIONARY 481 (3d ed. 2002).

Connection could be subject to multiple meanings, depending on how close the legislature intended the connection to be. It could mean two people connected very closely or very distantly by blood or marriage. A familial connection by marriage could extend infinitely.[6] Because connection is subject to more than one meaning, we look to legislative history and relevant case law to determine legislative intent. *Ervin*, 169 Wn.2d at 820.

Because a family would be more likely to report abuse if a court had sentencing alternatives other than incarceration, one of the original purposes of a SSOSA sentence included promoting the reporting of sex crimes by children against family members. *See State v. Jackson*, 61 Wn. App. 86, 92, 809 P.2d 221 (1991) ("providing alternatives to confinement had resulted in increased reporting of sex crimes, especially in the case of intrafamily abuse"). In 2004, the legislature added that to be eligible for a SSOSA sentence an offender had to have "an established relationship with, or connection to, the victim" apart from the commission of the crime. RCW 9.94A.670(2)(e);

---

[6] There is a sociological theory, based on a study published in 1967, that every person on the planet is separated from any other person by only six associations. This theory sparked a popular board game called "Six Degrees of Kevin Bacon" where players must link one actor to the actor Kevin Bacon within six associations. Thomas MacMillan, *The Classic Study That Showed the World Is Smaller Than You Think*, THE CUT (Mar. 14, 2018), https://www.thecut.com/2018/03/the-history-of-the-six-degrees-of-separation-study.html.

LAWS OF 2004, ch. 176, § 4.  The House Bill report stated that "[t]he majority of sex crimes against children are committed by people who have a relationship with the child.  For those kids and their parents, you have to have the SSOSA option available.  If the treatment option is eliminated, people will go underground."  S.B. REP. ON H.B. 2400, 58th Leg., Reg. Sess. (Wash. 2004).  By limiting SSOSA eligible sentences to a specific group, the legislature intended to restrict who the courts could sentence under this option.  The legislature's goal included promoting reporting and protecting children.  "Persons guilty of victimizing our children must serve time.  A message must be sent for the sake of children—if you do the crime, you do hard time.  This bill will give families and victims justice."  S.B. REP. ON H.B. 2400.

The legislature intended the connection between the victim and the offender to be close enough that a SSOSA sentence would encourage reporting despite that connection.  It was not meant to apply to an offender who could not remember meeting or speaking to the victim before the incident and had nothing beyond a possible "hi-bye" acquaintance with her parents.  MB's familial relationship to Pratt is also tenuous.  MB's mother's stepsister is married to Pratt's uncle.  The legislature did not intend to make a person eligible for a SSOSA sentence based on this type of attenuated connection.  We are also mindful that the connections articulated by the court in its findings of fact are, for the most part, between the victim's family and Pratt, not the victim, MB, and Pratt.

In reviewing the dissent, it becomes clear that if we were to adopt the dissent's reasoning, any connection between the offender and the victim, no matter how attenuated or tenuous it was, would qualify an offender for a SSOSA sentence.  This reasoning would render the meaning of the statute superfluous and lead to absurd results.  We presume the legislature does not intend absurd results and we interpret statutory language to avoid absurdity.  *Ervin*, 169 Wn.2d at 824.

10

We conclude that Pratt is not eligible for a SSOSA sentence and we remand for resentencing.[7]

## II. CROSS-APPEAL: EXCLUSION OF EXPERT TESTIMONY

Pratt argues that the trial court abused its discretion by excluding Johnson's testimony and that such exclusion violated his constitutional right to present a defense under the Sixth Amendment to the United States Constitution. He argues the court utilized the wrong standard for excluding the evidence. We disagree with Pratt.

### A. No Abuse of Discretion

We review a trial court's evidentiary rulings for abuse of discretion. *State v. Clark*, 187 Wn.2d 641, 648, 389 P.3d 462 (2017). A trial court abuses its discretion when its decision is manifestly unreasonable, or when it is based untenable grounds or untenable reasons. *State v. Blackwell*, 120 Wn.2d 822, 830, 845 P.2d 1017 (1993). A decision is based on untenable grounds "'if it rests on facts unsupported in the record or was reached by applying the wrong legal standard.'" *State v. Dixon*, 159 Wn.2d 65, 75-76, 147 P.3d 991 (2006) (quoting *State v. Rohrich*, 149 Wn.2d 647 654, 71 P.3d 638 (2003)).

Expert testimony is admissible "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." ER 702. "Under ER 702, expert testimony will be considered helpful to the trier of fact only if its relevance can be established." *State v. Atsbeha*, 142 Wn.2d 904, 917-18, 16 P.3d 626 (2001). "Evidence is relevant if a logical nexus exists

---

[7] Because we have determined that Pratt is not eligible for a SSOSA sentence, we do not address the State's other arguments.

between the evidence and the fact to be established." *State v. Burkins*, 94 Wn. App. 677, 692, 973 P.2d 15 (1999).

We can affirm a trial court on any legal grounds supported by the record. *State v. Costich*, 152 Wn.2d 463, 477, 98 P.3d 795 (2004).

Here, the trial court stated it was excluding Johnson's testimony because it could amount to "a back door diminished capacity." RP (Sept. 19, 2017) at 65. Pratt entered a defense of general denial and sought to introduce Johnson's testimony to support it. On appeal, Pratt argues instead that Johnson's testimony would support the claim that he was asleep, which he argues is a defense of lack of volition.

Washington courts have recognized a defense of involuntary action due to sleepwalking, "'where, at the time of the [crime], the [offender] was clearly unconscious [whereby], such unconsciousness will constitute a defense, as in the case of a homicide committed by one in a state of somnambulism, or while delirious from disease.'" *State v. Utter*, 4 Wn. App. 137, 141-42, 479 P.2d 946 (1971) (quoting 1 O. WARREN & B. BILAS, WARREN ON HOMICIDE § 61 (perm. ed. 1938)). However, the court "recogniz[ed] that the theory of involuntary or automatistic acts is 'similar to one of mental incapacity,' though 'distinct from that concept.'" *State v. Deer*, 175 Wn.2d 725, 734, 287 P.3d 539 (2012) (quoting *Utter*, 4 Wn. App. at 141). The defense of involuntary action as a result of being asleep, therefore, should not be treated as one of diminished capacity. Instead, involuntariness due to sleep is an affirmative defense that must be proved by the defendant by a preponderance of the evidence. *Deer*, 175 Wn.2d at 733-34.

Once the court properly determined that Pratt could not meet the evidentiary requirements to present a defense of diminished capacity, Pratt proffered Johnson's testimony to prove that sexsomnia is a recognized psychiatric disorder. Pratt agreed to limit the testimony to saying that

there are documented cases where it has occurred. Although the court excluded the evidence for the wrong reason, the evidence was properly excluded. It had no relevance. "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probably or less probably than it would be without the evidence." ER 401.

Johnson could not testify that Pratt suffered from sexsomnia either on the night of the sexual molestation or ever. The fact that this disorder exists is irrelevant without some tendency to make the existence of sexsomnia of consequence to the determination of the action more probable than it would without the evidence. No nexus existed between Pratt, sexsomnia, and his actions on the night of the molestation.

Therefore, the court properly excluded Johnson's testimony because it was irrelevant to both the general denial defense and to a defense of lack of volition. No "logical nexus exists between the evidence and the fact to be established." *Burkins*, 94 Wn. App. at 692.

B.     Sixth Amendment Violation

The United States Constitution and the Washington State Constitution guarantee defendants the right to present a defense. U.S. CONST. amend. VI, XIV; WASH. CONST. art. I, § 22; *State v. Wittenbarger*, 124 Wn.2d 467, 474, 880 P.2d 517 (1994); *State v. Yokel*, 196 Wn. App. 424, 433, 383 P.3d 619 (2016). Accordingly, a defendant has a "right to present a defense 'consisting of relevant evidence that is not otherwise inadmissible.'" *State v. Mee Hui Kim*, 134 Wn. App. 27, 41, 139 P.3d 354 (2006) (quoting *State v Rehak*, 67 Wn. App. 157, 162, 834 P.2d 651 (1992)). But, "'a criminal defendant has no constitutional right to have irrelevant evidence admitted in his or her defense.'" *Mee Hui Kim*, 134 Wn. App. at 41 (quoting *State v. Thomas*, 150 Wn.2d 821, 857, 83 P.3d 970 (2004)). We review the court's evidentiary decision for an abuse of

discretion. *State v. Blair*, 3 Wn. App. 2d 343, 350-52, 415 P.3d 1232 (2018). If the court did not abuse its discretion in excluding evidence, then there is no error. *Blair*, 3 Wn. App. 2d at 350-52.

The court properly excluded Johnson's testimony. Pratt has no constitutional right to have irrelevant evidence admitted in his defense. We conclude that no violation of Pratt's constitutional right to present a defense occurred.

We affirm the conviction and remand for resentencing.

Melnick, J.

I concur:

Lee, J.

MAXA, C.J. (dissenting in part) – I agree that Cory Pratt's conviction should be affirmed. I disagree with the majority's conclusion that Pratt was not eligible for a Special Sex Offender Sentencing Alternative (SSOSA) sentence under RCW 9.94A.670(2)(e).

RCW 9.94A.670(2) states that an offender is eligible for a SSOSA sentence if six requirements are satisfied. The only requirement at issue here is contained in RCW 9.94A.670(2)(e) – that "[t]he offender had an established relationship with, or connection to, the victim such that the sole connection with the victim was not the commission of the crime."

The majority focuses on the nature of the relationship or connection between the offender and the victim, and concludes that a relatively minimal connection is not sufficient under RCW 9.94A.670(2)(e). But the majority ignores the second part of that subsection. The relationship or connection need only be enough that "the sole connection with the victim was not the commission of the crime." Therefore, the real question is not whether the connection between the offender and the victim rose to a certain level. The question is whether the *sole connection* between the offender and the victim was the commission of the crime.

Here, it is undisputed that the *sole connection* between Pratt and MB was *not* the commission of the crime. Pratt and the victim were both invited to, and attended, the same birthday party. There was a tangential family connection between Pratt's family and the victim's family. And Pratt had a face-to-face connection with the victim – he handed her a skewer for roasting marshmallows. In fact, the trial court made a specific finding of fact – which the majority concludes is supported by substantial evidence – that Pratt and MB "had contact during the course of [the] party other than the actions that constitute the crime herein." Clerk's Papers at 99.

Given this evidence and the trial court's factual finding, RCW 9.94A.670(2)(e) necessarily was satisfied here. Pratt and MB had some connection before the crime was committed. And the sole connection between Pratt and MB was not the commission of the crime.

Whether the trial court here should have imposed a SSOSA sentence in the exercise of its discretion is a separate issue. But Pratt clearly was *eligible* for a SSOSA under the plain language of RCW 9.94A.670(2)(e).

_____
Maxa, C.J.