# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 53753-2-II |
| Respondent, | |
| v. | |
| ALPHONSO CURTIS BROWNLEE, | UNPUBLISHED OPINION |
| Appellant. | |

VELJACIC, J. — A jury convicted Alphonso Brownlee of two counts of residential burglary, two counts of assault in the second degree, two counts of violation of a no contact order, and two counts of tampering with a witness. The victim of these crimes did not testify. The State's evidence at trial included sworn victim statements admitted under the forfeiture by wrongdoing doctrine. Brownlee appeals his conviction, arguing that the trial court violated his constitutional right to confrontation by admitting the victim's out-of-court statements. We affirm.

## FACTS

The State charged Brownlee with two counts of residential burglary, two counts of assault in the second degree, two counts of violation of a no contact order, and two counts of tampering with a witness. The jury concluded that each count was a crime of domestic violence. The charges arose out of two incidents that occurred in May 2019, involving Jacqueline White, the mother of his child. White wrote a sworn statement detailing the circumstances of Brownlee's assault against her. White had a prior no contact order against Brownlee due to a past assault against her.

Before trial, the State had mailed subpoenas to White's last known address, attempted personal service, and issued a material witness warrant. In spite of these efforts, the State did not reach her. White was unavailable for trial.

When White failed to appear to testify at trial, the State sought to admit White's sworn written statement as substantive evidence. The State argued that Brownlee had procured White's unavailability thereby forfeiting his confrontation right under the doctrine of forfeiture by wrongdoing.

In making its decision, the trial court reviewed White's statement and Brownlee's phone calls from jail. Specifically, the trial court considered the phone calls Brownlee made before the May 2019 incident and arrest while he was in jail for a prior domestic violence charge also involving White.

On January 30, 2019, Brownlee called a person by the name of Sierra and learned that White was staying with Martisha Eckles, Brownlee's cousin. Brownlee requested help from Sierra but conveyed that there was "only so [] much" he could say over the phone. Clerk's Papers (CP) at 850. Brownlee said that there are things that can be done to get him out of jail, and that Sierra should "fix" his situation by contacting Maurina Thomas, Brownlee's mother, about White. CP at 846-47. While asking Sierra for assistance, Brownlee repeatedly confirmed with, "You know what I'm saying?" CP at 846.

On February 3, Brownlee called Thomas and told her he was not worried about White testifying. He also told Thomas that they should not talk about the case over the phone anymore and that he would write her a letter.

On February 19, Brownlee again called Thomas and told her that he had sent her letters. He asked her to be his eyes and ears and to forward his comments "down the pipeline." CP at 896.

On March 8, Brownlee called Thomas. He mentioned that he did not want to speak on the phone about his case. He also told Thomas that she should pay attention to the letters he sent to her, that she knows what to do, and added, "'Ya know what I'm sayin'?" CP at 942. He also said that everyone should be "on the same page." CP at 944.

On March 11, Brownlee spoke with Thomas. He stressed that everyone is "on point" and continued, saying that Eckles "knows her stuff" and would not testify. CP at 957. Brownlee referred to White and said she will not appear at trial, will not be found, and that "she'll deal with [Brownlee] later." CP at 958. Brownlee ended the call by asking Thomas to ensure everyone is on the same page.

On March 20, Brownlee called Thomas and said that "[t]hings need to be taken care of" and "whoever's important" should call the State. CP at 993. Brownlee asked Thomas to inform Eckles that she should ignore a subpoena and refuse to cooperate in the case. He instructed Thomas to have Eckles call the State to inform them that she will not testify.

In considering forfeiture by wrongdoing, the superior court also reviewed evidence other than the phone calls stemming from the May 2019 incidents. During Brownlee's arrest for the May 2019 incidents, he made a spontaneous comment that White would recant. Brownlee also attempted to send White a text message telling her to recant, but he accidentally sent the message to a police officer instead.

The trial court issued findings of fact and conclusions of law determining that Brownlee had forfeited his right to confrontation. The court admitted White's sworn statement.

Brownlee disputes the following findings of fact:

VI.
That on January 30, 2019 at 18:24 the Defendant has another call with his Cousin, Ms. Eckles. Several times he tells Ms. Eckles things could be done to get him out of jail, followed by "you know what I'm saying." He tells Ms. Eckles that

3

she is going to get a message and that the message is going to do what it needs to do. After that comment he talks about her knowing what the phone is like. Later he talks about how his mother is going to come over and see "'you guys" (Ms. White is still staying with Ms. Eckles), that his mom will explain some stuff because she is not getting it. He again talks about not being able to say stuff over the phone and that things can be done to get him out of jail. These comments are followed by "you know what I'm saying".

VII.

That on February 3, 2019 at 17:30 the Defendant talks to his mother Maurina Thomas. During this call he tells his mom that he is not worried about Ms. White testifying. Later, after talking to his mom about things that should be done, he says "you know what I mean" and then tells her that from now on they cannot talk about the court case over the phone and that anything he needs to say he will write in a latter (sic).

VIII.

That on February 19, 2019 at 15:57, the defendant talks to Ms. Thomas. During this call he talks about not wanting to talk on the phone because his calls are being listened to. He tells Ms. Thomas to be his eyes and ears and tells her she needs to be his mouthpiece. He tells Ms. Thomas that everyone needs to be on "on (sic) accord" out there and tells her she needs to pass everything down the pipeline, that everything he says needs go down the pipeline. He then says, "you know what I'm saying."

. . . .

XI.

That on March 8, 2019 at 17:19 the Defendant talks to Ms. Thomas. During this call he talks, again, about not liking to talk about it over the phone. He tells her to pay attention to his letters and that she knows what to do. As with the other calls he says you know what I'm saying and talks about being on the same page.

XII.

That on March 11, 2019 at 16:08, the Defendant talks to Ms. Thomas. During this call the defendant talks about everyone being on point, about Ms. Eckles knowing her stuff and that "she" is not going to work with the state. He also talks about how both he and Ms. Thomas know that "she" is not going to come in and how "she" will not be found. As Ms. Eckles whereabout [sic] were known and finding her would not be an issue it is clear the Defendant is talking about Ms. White. During this call he again talks about Ms. Thomas making sure that everyone is on the same page and letting things be known.

. . . .

### XXIII.

Jacqueline White is unavailable for trial. Her whereabouts are unknown. She has been mailed and personal service of subpoenas has been attempted on numerous occasions. Ms. Eckles currently appears to be available for trial.

### XXIV.

The defendant was involved in and responsible for procuring the unavailability of Ms. White. He has also attempted to procure the unavailability of Ms. Eckles although she currently appears to be available.

### XXV.

The defendant's actions were intended to prevent Ms. White and Ms. Eckles from testifying. The Defendant began these efforts while case 19-1-00018-18 was pending. And he continued the efforts after he was released from that matter, while he was out of custody all the way to the point of the first day of his trial in this case. His efforts to procure the unavailability of the witnesses has been ongoing throughout both case 19-1-00018-18 and this case.

CP at 1039-46.

Brownlee also challenges the following conclusions of law:

### III.

That the defendant was involved in and responsible for procuring the unavailability of Ms. White. He has also attempted to procure the unavailability of Ms. Eckles although she currently appears to be available.

### IV.

That [t]he defendant's actions were intended to prevent Ms. White and Ms. Eckles from testifying.

CP at 1047.

On the first day of Brownlee's trial, the State requested a continuance because the assigned prosecutor was busy with a prior trial. The court granted the continuance over Brownlee's objection, concluding that the assigned prosecutor's unavailability due to their work on the prior trial satisfied the requirements of CrR 3.3(f)(2).

5

A jury convicted Brownlee of two counts of residential burglary, two counts of second degree assault, two counts of violation of a no contact order, and two counts of tampering with a witness. Brownlee appeals his convictions.

ANALYSIS

Brownlee argues that the trial court erred in admitting White's written statement as substantive evidence. Brownlee also challenges several findings of fact and conclusions of law made by the trial court in its order admitting White's statements under the forfeiture by wrongdoing doctrine. Lastly, Brownlee argues that the trial court violated his right to confrontation under the Sixth Amendment to the United States Constitution by admitting White's out-of-court statements. We affirm the trial court's rulings.

I.    STANDARD OF REVIEW

The State must prove forfeiture by wrongdoing by clear, cogent, and convincing evidence. *State v. Fallentine*, 149 Wn. App. 614, 619-20, 215 P.3d 945 (2009). Under such standard, we review a trial court's ruling to determine whether it is supported by substantial evidence that is highly probable. *Id*. at 620-21. "Substantial evidence exists where there is a sufficient quantity of evidence in the record to persuade a fair-minded, rational person of the truth of the finding." *State v. Hill*, 123 Wn.2d 641, 644, 870 P.2d 313 (1994). We review Brownlee's constitutional confrontation claim de novo. *State v. Dobbs*, 180 Wn.2d 1, 10, 320 P.3d 705 (2014).

II.    FORFEITURE BY WRONGDOING

A.    Legal Principles

The Sixth Amendment gives criminal defendants the right to confront the witnesses against them. *State v. Mason*, 160 Wn.2d 910, 925, 162 P.3d 396 (2007). The forfeiture by wrongdoing doctrine is an equitable exception to the Sixth Amendment's right to confrontation. *Id.* at 924-25.

6

Under the doctrine, defendants that procure the unavailability of a witness forfeit their right to confront the missing witness. *Id*. at 924.

The forfeiture by wrongdoing doctrine requires that: "(1) the defendant engaged in wrongdoing; (2) the wrongdoing was intended to render the absent witness unavailable at trial; and (3) the wrongdoing did, in fact, render the witness unavailable at trial." *State v. Tyler*, 138 Wn. App. 120, 128, 155 P.3d 1002 (2007).

"Unavailability means that the proponent is not presently able to obtain a confrontable witness' testimony." *State v. Ryan*, 103 Wn.2d 165, 171, 691 P.2d 197 (1984). "A witness may not be deemed unavailable unless the prosecution has made a good faith effort to obtain the witness' presence at trial." *Id.* at 170.

A defendant commits wrongdoing if they directly procure a witness's unavailability, or use an intermediary to do so. *State v. Hernandez*, 192 Wn. App. 673, 682, 368 P.3d 500 (2016). Further, a defendant who uses threats of violence against a witness commits wrongdoing. *Dobbs*, 180 Wn.2d at 12 (determining that stalking and attempting to harm a witness constitutes wrongdoing).

However, wrongdoing extends beyond procuring a witness's absence by threats of violence. *Hernandez*, 192 Wn. App. at 682. In *Hernandez*, the court held that encouraging a person to take a child witness out of the country by using coded language to communicate with the child's guardian was wrongdoing sufficient to implicate the forfeiture by wrongdoing doctrine. *Id*.

Additionally, prior domestic violence can be relevant to the inquiry of whether a defendant has wrongfully procured a witness's unavailability. *Giles v. California*, 554 U.S. 353, 377, 128 S. Ct. 2678, 171 L. Ed. 2d 488 (2008). In *Giles*, the United States Supreme Court concluded that acts

of domestic violence are intended to isolate victims and prevent them from seeking outside help and are therefore relevant to the inquiry. *Id.*

B.      Challenged Findings and Conclusions

Here, Brownlee challenges a number of findings of fact and conclusions of law. The burden of demonstrating a finding is not supported by substantial evidence rests with the party challenging it. *State v. Vickers*, 148 Wn.2d 91, 116, 59 P.3d 58 (2002). When the defendant challenges the sufficiency of the evidence in a criminal case, all reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Brownlee fails to show the trial court's findings are unsupported by substantial evidence that is clear, cogent, and convincing.

1.      Findings of Fact VI, VII, VIII, XI, and XII.

Brownlee assigns error to findings of fact VI, VII, VIII, XI, and XII, but he provides no argument. Therefore, his assignments of error are waived and we will not consider them. RAP 10.3(6); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

2.      Finding of Fact XXIII.

Finding of fact XXIII is supported by substantial evidence. Finding of fact XXIII states that White is unavailable for trial. Under *Ryan*, the State must make a good faith effort to procure White's attendance at trial. 103 Wn.2d at 170-71. Here, the State showed that it could not locate White despite making good faith efforts in the form of mailing a subpoena, attempting personal service, and issuing a material witness warrant. Thus, the trial court's finding that White was unavailable is supported by substantial evidence that is clear, cogent, and convincing because there is a sufficient quantity of evidence in the record to persuade a fair-minded, rational person of the truth of the finding.

3. Findings of Fact XXIV and XXIV.

We conclude that substantial evidence that is clear, cogent, and convincing supports the trial court's findings of fact XXIV and XXV. Additionally, we conclude that the facts show with a high degree of probability that Brownlee attempted to procure White's unavailability.

First, the record shows Brownlee made multiple attempts to procure White's unavailability. He expressly asked White to recant statements in a prior case. During multiple phone calls, he used thinly veiled language asking people to "fix" his situation. CP 846-47. During these calls he repeatedly said there were things that could be done to get him out of jail. And he stated upon his arrest that White would recant and he attempted to send her a text message telling her to recant.

Second, the record shows that Brownlee's communications were intended to procure White's unavailability. He appeared to believe that absent the forfeiture by wrongdoing doctrine, White's unavailability would result in his freedom.

Third, White was unavailable despite the State's reasonable efforts to contact her. White made a sworn statement showing a prior willingness to cooperate. After Brownlee's comments about White recanting, she stopped responding to the State's attempts to reach her.

Based on the record, the trial court's findings of fact XXIV and XXV are supported by a sufficient quantity of evidence in the record to persuade a fair-minded, rational person of the truth of the findings.

C. Challenged Conclusions of Law

Brownlee challenges conclusions of law III and IV. We review conclusions of law to determine whether they are supported by the findings of fact. *State v. Pratt*, 11 Wn. App. 2d 450, 457, 454 P.3d 875 (2019), *aff'd*, 196 Wn.2d 849 (2021). However, here, Brownlee challenges conclusions of law III and IV by only arguing that the findings of fact are unsupported by

substantial evidence.  As discussed above, the challenged findings are supported by substantial evidence that is clear, cogent, and convincing.  Thus, Brownlee's challenge fails.

III.    STATEMENT OF ADDITIONAL GROUNDS (SAG)

Brownlee submitted a SAG asserting that the trial court violated his time for trial right under CrR 3.3 when it continued the trial over his objections.

We review an alleged violation of the time to trial rule de novo.  *State v. Carlyle*, 84 Wn. App. 33, 35-36, 925 P.2d 635 (1996).  "'[T]he decision to grant or deny a motion for a continuance rests within the sound discretion of the trial court,'" and we will not disturb the trial court's decision unless there is a clear showing it is "'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'"  *State v. Flinn*, 154 Wn.2d 193, 199, 110 P.3d 748 (2005) (internal quotation marks omitted) (quoting *State v. Downing*, 151 Wn.2d 265, 272, 87 P.3d 1169 (2004)).

CrR 3.3(e)(8) states, "The following periods shall be excluded in computing the time for trial: . . . Unavoidable or unforeseen circumstances affecting the time for trial beyond the control of the court or of the parties."  "Unavailability of counsel where counsel is in trial on another matter may constitute unforeseen or unavoidable circumstances justifying a trial extension under CrR 3.3([e])(8)."  *State v. Jones*, 117 Wn. App. 721, 730, 72 P.3d 1110 (2003).

Here, the record shows the assigned prosecutor was in another trial.  Thus, the prosecutor's absence was unforeseen or unavoidable.  We conclude that the continuance did not violate Brownlee's time for trial right under CrR 3.3 because the prosecutor assigned to Brownlee's case was occupied with another trial.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Veljacic, J.

We concur:

Worswick, J.

Lee, C.J.