IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 81949-6-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RANDY L. KEITH, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |
| | ) | |

VERELLEN, J. — Randy Keith was convicted on two counts of first degree rape of a child and two counts of first degree child molestation.

He argues retrial is required because two of the court's evidentiary rulings prejudiced his right to present a defense and allowed inadmissible hearsay. But a defendant has no right to present irrelevant evidence, and Keith fails to show the evidence he sought to admit was relevant. And he failed to preserve the hearsay issue for review because he did not object to the decision to admit it.

Keith contends the to-convict jury instructions using only the initials of the alleged victim commented on the evidence, bolstered the victim's credibility, and reduced the State's burden of proof. But he fails to explain why we should disregard this court's recent decision in State v. Mansour,[1] which considered these arguments under similar circumstances and rejected them.

---

[1] 14 Wn. App. 2d 323, 470 P.3d 543, review denied, 196 Wn.2d 1040, 479 P.3d 708 (2021).

He also contends the prosecutor committed prejudicial misconduct by discussing the to-convict instruction with the jury and explaining the use of initials was intended to protect the victim's identity. Because the instruction itself was proper, Keith fails to show how an accurate explanation for the instruction was itself improper.

Therefore, we affirm.

FACTS

Randy L. Keith and Zacra Burris dated for most of 2018 and broke up on Christmas Day. Burris lived in an apartment with her nine-year-old daughter, D.G., and her two younger sons. Beginning that summer, Keith began sleeping at Burris's apartment regularly, even when she was working nights.

Keith was involved in the household's daily activities, such as shopping for groceries, cooking meals, putting the kids to bed, and bathing them. He also helped D.G. with her homework and would play Barbie dolls with her. Keith even gave D.G. an Xbox game console as a reward for doing her homework, and they bonded while playing video games together. Unlike Burris, Keith used discipline to make the children complete their chores and homework. One punishment was taking away her Xbox.

Beginning around late November or early December of 2018, the kids "started not liking being home or wanting to be around him," and D.G. "just didn't want to be around him."[2] Burris and D.G.'s grandmother assumed D.G. disliked Keith's use of discipline to enforce rules. But D.G.'s grandmother decided to call

---

[2] Report of Proceedings (RP) (Aug. 20, 2020) at 474-75.

Child Protective Services (CPS) after D.G. became "really clingy,"[3] wrote a letter to Santa Claus asking him to kill Keith, and wet the bed when sleeping at her home.

CPS referred D.G. for an evaluation by the Providence Intervention Center for Assault and Abuse at the Child Advocacy Center of Snohomish County at Dawson Place. She was evaluated by Christa Kleiner, a pediatric nurse practitioner working as a sexual assault nurse examiner. During the evaluation, D.G. told Kleiner that Keith had touched her "private area . . . a lot" with his fingers and also used his tongue and "his private area" even when she told him to stop.[4]

Keith was charged with two counts of first degree rape of a child and two counts of first degree child molestation. Pretrial, Keith sought to introduce evidence that members of D.G.'s family had made a number of unfounded sexual abuse allegations about others to CPS, and the court denied the request. During trial, Keith argued D.G. made up the allegations because she "hate[d] her mom's boyfriend"[5] due to his effort to impose more discipline, and her "plan [was] to make more of an accusation" to get "him permanently out of their lives."[6]

D.G. and Kleiner both testified. D.G. gave detailed testimony about Keith's conduct, and defense counsel cross-examined her about numerous inconsistencies between her testimony and various pretrial interviews. The State asked Kleiner to read portions of her evaluation notes that quoted D.G.'s statements from her evaluation, and defense counsel did not object. The jury

---

[3] Id. at 541.

[4] Id. at 577.

[5] RP (Aug. 19, 2020) at 369-71.

[6] RP (Aug. 24, 2020) at 767.

found Keith guilty of all charges. He was sentenced to a minimum term of 240 months' incarceration with a maximum term of life on each of the first degree child rape convictions, both running concurrently with his 198-month sentences for the molestation convictions.

Keith appeals.

ANALYSIS

I. Right to Present a Defense

Keith argues the court prejudiced his Sixth Amendment right to present a defense when it excluded evidence of D.G.'s family members' unfounded allegations to CPS. The State contends the evidence was not relevant.

When a defendant alleges his right to present a defense was infringed, we review evidentiary rulings for an abuse of discretion and then consider de novo whether the rulings prejudiced his constitutional rights.[7] A trial court abuses its discretion when its decision rests on untenable grounds or was made for untenable reasons.[8]

Keith argues the evidence was necessary to impeach D.G. by demonstrating an alternate motive for her accusations. Keith asserted to the trial court that D.G.'s

> use of allegations as a tool to make sure that [Keith] cannot and
> does not return to the family is something she has learned, because
> over the years, she has watched her mom, her father, her father's
> girlfriend, [and] her grandmother make allegations, probably

---

[7] State v. Arndt, 194 Wn.2d 784, 797-98, 453 P.3d 696 (2019) (citing State v. Clark, 187 Wn.2d 641, 648-49, 389 P.3d 462 (2017)).

[8] Id. at 799 (quoting State v. Lord, 161 Wn.2d 276, 283-84, 165 P.3d 1251 (2007)).

unfounded . . . as ways to prevent [D.G.] from being able to see people, prevent her from being able to contact people.[9]

The court concluded the evidence might be admissible:

I agree, if the child has that information, based on the defense theory, it's likely admissible.

I think the best way to handle it would probably be, before the child testified, we have a short hearing—hopefully, short—outside the presence of the jurors, where [defense counsel] ask[s] the questions, and if you can tie in that the child was aware of it and can establish that, you know, in essence, that she understood that, you know, making these statements led to this result, then I would consider allowing you to use the testimony.[10]

Criminal defendants have the right to present evidence in their own defense.[11] But this right is "'subject to established rules of procedure and evidence.'"[12] Irrelevant evidence is inadmissible.[13] "Defendants have a right to present only relevant evidence, with no constitutional right to present irrelevant evidence."[14] "'Evidence is relevant if a logical nexus exists between the evidence and the fact to be established.'"[15]

---

[9] RP (Aug. 14, 2020) at 31.

[10] Id. at 37-38.

[11] Clark, 187 Wn.2d at 653.

[12] State v. Ward, 8 Wn. App. 2d 365, 371, 438 P.3d 588 (2019) (internal quotation marks omitted) (quoting State v. Lizarraga, 191 Wn. App. 530, 553, 364 P.3d 810 (2015)).

[13] ER 402.

[14] State v. Jones, 168 Wn.2d 713, 720, 230 P.3d 576 (2010) (citing State v. Gregory, 158 Wn.2d 759, 786 n.6, 147 P.3d 1201 (2006)).

[15] State v. Pratt, 11 Wn. App. 2d 450, 462, 454 P.3d 875 (2019) (quoting State v. Burkins, 94 Wn. App. 677, 692, 973 P.2d 15 (1999)), aff'd, 196 Wn.2d 849, 479 P.3d 680 (2021).

ER 104 governs conditional relevance and "defines a procedure for handling the situation in which a party wishes to prove fact A, but fact A is relevant only if fact B is established."[16] The court has discretion to determine the order of proof.[17]

Here, the court concluded the history of unfounded allegations to CPS was relevant if D.G. knew of them and of their possible effects. Keith argues the court abused its discretion because it "restricted testimony about prior acts to only those [D.G.] could remember."[18] But, under the defense's theory, the unfounded allegations were relevant because they taught D.G. how to get rid of people she did not like. If D.G. was unaware of the family's allegations, then there was no link between the past CPS allegations and D.G.'s allegations against Keith. Without a logical nexus between the two, the evidence was not relevant.[19] The court did not abuse its discretion by conditioning relevance on D.G.'s knowledge of the allegations.[20]

---

[16] State v. Dixon, 159 Wn.2d 65, 78, 147 P.3d 991 (2006) (emphasis omitted) (quoting ER 104(b) cmt. 104). Even though the trial court did not expressly base its ruling on ER 104 or conditional relevance, we can affirm on any legal basis supported by the record. State v. Costich, 152 Wn.2d 463, 477, 98 P.3d 795 (2004) (citing In re Marriage of Rideout, 150 Wn.2d 337, 358, 77 P.3d 1174 (2003)).

[17] Dixon, 159 Wn.2d at 78; ER 104(a).

[18] Appellant's Br. at 17.

[19] Pratt, 11 Wn. App. 2d at 462 (quoting Burkins, 94 Wn. App. at 692).

[20] See Dixon, 159 Wn.2d at 78 (a trial court does not abuse its discretion by conditioning relevance when "the defense's desire to prove fact A . . . was dependent on proof of fact B").

"[T]he trial court's proper inquiry under ER 104(b) is 'whether the evidence is sufficient to support a finding of the needed fact.'"[21] During the in limine hearing, D.G. did not testify that she knew about unfounded allegations to CPS by her family, and Keith did not provide evidence she did. Because Keith failed to proffer any evidence showing D.G. was aware of past allegations to CPS or their use to exclude people, the court did not err by concluding her family members' past, unfounded CPS allegations were irrelevant. And because a defendant has no right to present irrelevant evidence,[22] Keith fails to show the court prejudiced his right to present a defense.[23]

## II. Hearsay

Keith argues hearsay testimony by Kleiner violated the rules of evidence and was prejudicial, requiring retrial. The State argues he did not preserve this issue for review.

The State moved in limine to "allow testimony from [registered nurse] Christa Kleiner about the victim's description of the crime" under hearsay exception ER 803(a)(4).[24] ER 803(a)(4) allows admission of hearsay statements made for purposes of medical diagnosis or treatment.

---

[21] Id. (quoting State v. Karpenski, 94 Wn. App. 80, 102, 971 P.2d 553 (1999)).

[22] Jones, 168 Wn.2d at 720 (citing Gregory, 158 Wn.2d at 786 n.6).

[23] To the extent Keith argues his right to present a defense was harmed by also excluding this evidence from witnesses other than D.G., he still fails to explain how it was relevant to D.G.'s allegations.

[24] Clerk's Papers (CP) at 143.

When the court considered the State's motion, defense counsel said, "There [are] statements that the alleged victim made to [Kleiner] that we concede we expect to come in under" ER 803(a)(4).[25] Defense counsel objected only to Kleiner testifying to statements from Burris and not to statements from D.G. The State proposed "not talk[ing] about the things that the mother told Ms. Kleiner" and "focus[ing] only on the statements by the child, which . . . fall squarely in the medical hearsay exception."[26] Defense counsel agreed and also agreed to the court's ruling admitting Kleiner's hearsay testimony "[s]o long as [the State] can lay the foundation."[27] During trial, Keith did not object when Kleiner testified to hearsay from D.G. about being raped and molested by him.

The general rule is that an appellate court will not review an error raised for the first time on appeal unless it is a manifest error affecting a constitutional right.[28] Absent manifest error, an appellant cannot assign error to a ruling admitting evidence when he fails to make a timely and specific objection.[29] Because Keith never objected to Kleiner's testimony and does not argue his constitutional rights were affected, he failed to preserve this issue for review.[30]

---

[25] RP (Aug. 14, 2020) at 20.

[26] Id. at 25.

[27] Id. at 26.

[28] State v. Gentry, 183 Wn.2d 749, 760, 356 P.3d 714 (2015) (citing State v. Kirkman, 159 Wn.2d 918, 926, 155 P.3d 125 (2007); RAP 2.5(a)(3)).

[29] State v. Heutink, 12 Wn. App. 2d 336, 355, 458 P.3d 796 (citing ER 103(a)(1); State v. Avendano-Lopez, 79 Wn. App. 706, 710, 904 P.2d 324 (1995)), review denied, 195 Wn.2d 1027, 466 P.3d 775 (2020).

[30] Id. (citing ER 103(a)(1); Avendano-Lopez, 79 Wn. App. at 710); see Gentry, 183 Wn.2d at 760-61 (declining to address a purely statutory error alleged for the first time on appeal).

III.  Use of Victim's Initials

Keith contends the use of D.G.'s initials in the to-convict jury instructions was a comment on the evidence by the court that bolstered D.G.'s credibility and reduced the State's burden of proof.

Article IV, section 16 of the Washington Constitution prohibits judges from "'conveying to the jury his or her personal attitudes toward the merits of the case,' or instructing a jury that 'matters of fact have been established as a matter of law.'"[31]  In Mansour, we considered and rejected similar arguments under similar circumstances.[32]  A father was convicted of first degree child molestation against his daughter and argued the use of her initials in the to-convict instruction was a comment on the evidence by the court and reduced the State's burden of proof.[33] We concluded the use of initials did not comment on the evidence because the daughter's name was not a fact issue for the jury.[34]  Nor did it telegraph "the judge's 'personal attitudes toward the merits of the case,' much less that the judge considered [the daughter] a victim."[35]  We also concluded the jury instruction did not reduce the State's burden of proof because a jury would not presume a complainant was a victim "simply because of the use of her initials" when the jury

---

[31] State v. Levy, 156 Wn.2d 709, 721, 132 P.3d 1076 (2006) (quoting State v. Becker, 132 Wn.2d 54, 64, 935 P.2d 1321 (1997)).

[32] 14 Wn. App. 2d at 325-26.

[33] Id. at 328, 329.

[34] Id. at 330 (citing Levy, 156 Wn.2d at 722).

[35] Id. (internal quotation marks omitted) (quoting Levy, 156 Wn.2d at 721).

was also property instructed about the presumption of innocence and the State's burden of proof.[36]

Keith argues we should decline to follow Mansour because here, unlike that case, the prosecutor referred to D.G.'s initials during closing argument. But he fails to explain why this fact makes Mansour inapplicable to his comment on the evidence, bolstering, and burden of proof arguments. Nor does he explain why this minor factual distinction means Mansour was wrongly decided.

Here, like Mansour, jury instruction 3 correctly stated the presumption of innocence and the State's burden of proof, and Keith cites no authority for the proposition that a closing argument can make an accurate jury instruction improper. Because Mansour is highly analogous to the circumstances here, it applies. Keith's arguments about the use of D.G.'s initials are unpersuasive.

Keith argues the prosecutor committed prejudicial misconduct during closing argument when he explained the use of initials in the to-convict jury instructions on the rape charges. Referring to D.G. by her first name, the prosecutor explained,

> [D.G.] has been very clear about who did this, and we are very clear about who was in the home at that time—had sexual intercourse . . . with D.G., [XX-XX]-2008. We use initials in court documents when we're dealing with children to protect their identity. The "D.G." stands for [full name], and that's her birthday.[37]

Keith did not object.

---

[36] Id. at 331.

[37] RP (Aug. 24, 2020) at 755.

Under these circumstances, Keith bears the burden of proving the prosecutor's conduct was improper, prejudicial,[38] and "so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice."[39]

Keith contends the prosecutor's explanation for D.G.'s initials "reduced the government's burden of proof by alerting the jury to the court's belief that [D.G.] was a victim."[40] Because the use of D.G.'s initials neither instructs the jury on a factual issue requiring resolution nor telegraphs the court's beliefs,[41] he fails to show the prosecutor's argument was improper or that the resultant prejudice could not have been cured by a jury instruction.

Therefore, we affirm.

_____
Verellen, J.

WE CONCUR:

_____     _____
Coburn, J.                          Appelwick, J.

---

[38] State v. Emery, 174 Wn.2d 741, 756, 278 P.3d 653 (2012) (citing State v. Thorgerson, 172 Wn.2d 438, 442, 258 P.3d 43 (2011)).

[39] Id. at 760-61 (citing State v. Stenson, 132 Wn.2d 668, 727, 940 P.2d 1239 (1997)).

[40] Appellant's Br. at 45.

[41] Mansour, 14 Wn. App. 2d at 329-30 (citing Levy, 156 Wn.2d at 721-22; State v. Alger, 31 Wn. App. at 244, 249, 640 P.2d 44 (1982)).